# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| Chief Petty Officer JOHN FISCHER and | * | |
| ASHLEY FISCHER, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. 1:22-cv-00286 |
| | * | |
| FORT BELVOIR RESIDENTIAL | * | |
| COMMUNITIES LLC, et al. | * | |
| | * | |
| Defendants | * | |

**PLAINTIFF'S 12/23/22 SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO ASHLEY FISCHER**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ashley Fischer hereby serves her supplemental responses dated 12/23/22 to the Interrogatories that were served on October 24, 2022 by Defendant Fort Belvoir Residential Communities LLC ("FBRC").

**SUPPLEMENTAL RESPONSES**

2.    Please describe in detail, with more particularity than provided in Your Complaint, the medical facts and circumstances that have lead You to believe that exposure to the real property located at **9547 Kezia Trail**, caused the harm and injuries you allege.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects that  the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff  objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case. This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring

1

the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

The Plaintiffs do not merely allege that "exposure" to the "real property" caused the harm and damage they allege, but more specifically, that aside from any personal injury in the form of diagnosable illness, the family suffered a loss of the ability to use and enjoy their property (a paid-for leasehold) due to Defendants' substantial and unreasonable interference with their ability to use and enjoy that property. The injury recoverable under this private nuisance claim is distinguishable from personal injury damages. Further, the Plaintiffs also allege that Defendant's poor and unlawful conduct extended beyond the physical conditions in the home to also include

2

the bullying and misleading, unfair and deceptive tenant service practices by the property manager. Thus the "medical facts and circumstances" do not account for relevant categories of Plaintiffs' legally cognizable harm and damages.

Further, as stated in the Complaint as amended, the Plaintiffs have not as of this time asserted a medical-causation personal-injury claim. Rather, as therein stated, they reserve the right to amend the complaint as the case proceeds in the event they determine there is evidence of medical causation of personal injury or illness as a result of the mold and other household indoor air exposures, meeting the applicable Virginia state-law causation standard for an individual personal injury claim.

While the discovery request seeks "more particularity than provided in Your Complaint," in fact the Complaint, as amended, provides detailed responsive information, and accordingly, where appropriate that information is included below.

In October 2017, the Fischers applied to contract for on-base housing at Fort Belvoir with FBRC. On October 24, 2017, Chief Fischer executed a form lease with FBRC regarding the 9547 Kezia Trail property. Chief Fischer was a contracting party under the lease, made rental payments pursuant to his BAH, and held a possessory and occupancy interest in the property. The Fischer family moved into their on-base home, which was located in the Vernondale community in the Villages at Belvoir.

Immediately upon moving in, starting around November 2017, Ms. Fischer began to suffer from chronic migraines (weekly, approximately 3-4 days a week), as well as what she believed to be panic attacks. Ms. Fischer sought treatment in March of 2019 for treatment for her anxiety and migraines by her primary care physician and neurologist. As further detail in that regard, the

Plaintiffs direct the Defendants to their medical records, which they will cooperate to produce under a confidentiality protective order.

In January 2018, the Fischers reported gaps in the back door to the property manager, noting that the door would open on its own and allow in wind and rain. It was never properly repaired during the Fischers' time living at the property. However, after the Fischers moved out, the door was replaced in preparation for new tenants.

In January 2018, the Fischers reported linoleum lifting in the upstairs master bathroom. Maintenance responded by gluing the linoleum and leaving a large rock on it to hold it down. Maintenance did not return to remove the rock and did not provide any instructions to the Fischers as to when or if they should remove it.

In October 2018, the Fischers noticed issues with the HVAC unit. Water was overflowing onto the floor, and flooding the laundry room floor, damaging the floor and leaving visible signs of water damage. Maintenance was notified, but they never opened the HVAC system and properly repaired it. HVAC issues were again reported in January and June 2019.

HVAC issues are a common marker for the problem homes in privatized military housing communities. Especially in older housing, the HVAC equipment, fixtures, and the associated ductwork, may never have been fixed, cleaned or replaced, since it was installed. Due to the nature of HVAC, with heat transference, there is moisture generated and moisture in the vicinity, as anyone seeing an air conditioner drip knows. In the right conditions and with the right kinds of surfaces, this breeds mold. Over time, HVAC areas and ductwork can become replete with mold which, moreover, is in places where family members in their ordinary scope of their daily life may not see it. It falls uniquely to the landlord's responsibility to control this problem.

Work orders regarding to the HVAC were placed on October 1, 2018 (the home felt "warm and muggy"), October 22, 2018 (a cap was missing and splashing water onto the HVAC closet floor—it was eventually discovered that this condition had caused mold to form in the area), and January 21, 2019 (the home's heating unit went entirely out and would not operate).

Each time the landlord's representatives who filled the work order would advise the Fischers that the issues with the HVAC were normal, and that the observed excessive dirt and humidity at the home were no cause for concern. These statements were false and fraudulent.

An average military family would have been duped at worst by this advice, and confused at best. In fact, if the promises made by the private companies to the Army when they won this project are to be believed, Defendants were to provide top-quality, excellent, clean and safe military housing. But none of the families ever saw this contract or the duties that it imposed on the landlord. Families could be unaware that the owner of their community was not even the military. They were actually living in a community owned, under a 50 year ground lease, by a private enterprise – here, Defendants.

In June 2019, mold was discovered in the ducts, On June 11th, 2019, a work order was submitted where the Fischers stated "I believe there is potentially mold in the ducts". In June of 2019, the representatives improperly painted over moldy fiberboard duct work with IAQ 8000 which is a coating material which is resistant to mold only on the surface of the coating. The product does not protect users or others against disease-causing bacteria, viruses, germs, or other organisms.  Ms. Fischer documented the use of IAQ 8000 with photographs.  In further support, see photos included with the lawsuit complaint and in addition, the family will produce all relevant responsive photos that they are able to locate after conducting a reasonable search.

5

In June 2019 a work order was submitted which alerted that there was "a hole in the ceiling, with potential water damage, above the sink…" Defendants' representatives inspected the hole, and falsely advised the Fischers that there was no water damage, and simply cosmetically repaired the hole without addressing the water damage or determining its root cause. This was once again unfair, deceptive, false and fraudulent conduct.

Potential mold was also noted in the HVAC unit, plenum, duct work, and HVAC closet flooring. A third-party contractor, Americlean, was brought in to clean the HVAC duct area on June 21, 2019. Within minutes, the duct cleaning company packed all their supplies and stated there was "mildew or something" and they couldn't clean the duct work. The problem was so severe that the duct cleaning service declined to clean the ducts.  Mrs. Fischer documented the unsealed HVAC and affected floor with photographs as per the Complaint and/or which will be produced.

Mold tests were conducted at the home on June 26, 2019. This testing revealed the presence of various molds at the home, including aspergillus, Cladosporium, Chaetomium, penicillin, hyphae, Alternaria, basidiospores, penicillium, and penicillium/aspergillus.

The family had no other choice but to move into a hotel as one of their children, R.F., was immunocompromised because he was on chemotherapy for brain cancer.  From the hotel, they moved into the Dogue Creek hospitality house, where they stayed from June 2019 to August 2019, to await the repairs at the 9547 Kezia Trail property. The Dogue Creek hospitality suite had been remediated prior to their move-in.

The process of being displaced and relocated caused substantial and unreasonable interference with their use and enjoyment of their home and caused discomfort, aggravation and

annoyance, as did the chronic and unresolved problems with the water intrusion and mold and the lack of proper tenant service at the Kezia Trail property.

When the family moved back to the 9547 Kezia Trail address in August after repairs were supposedly conducted, they found mold on a subfloor and on a vent.

The home's ducts had been sprayed with Benefect Decon 30 by maintenance previously, during remediation.

Immediately upon moving back into the home, the Fischer's family pet (a 2-year- old Goldendoodle) passed away suddenly due to unknown causes.

The Fischers reported the continued presence of mold at the property. Defendants conducted a cursory inspection of the property and improperly painted over the moldy subfloor, leaving the damaged and unsanitary carpet in place. They once again did not investigate or repair the cause of the mold. They advised the Fischers that the home was now safe to live in. This representation was false and unfair and deceptive because, first, the home remained unsafe, and because, second, no Defendant had performed the real root cause analysis required to start the process of truly correcting the problem in the unit.

Due to the mold and other issues at 9547 Kezia Trail, the family moved to 9225 Soldier Road in August 2019.

While residing at the Kezia Trail property, the Fischers' now 5-year-old was diagnosed with a Juvenile Pilocytic Astrocytoma, which is normally a slow-growing, benign brain tumor. The Fischer child's tumor grew at six times the normal rate and was labeled as malignant due to speed of growth and location: the brain stem.

After leaving the Kezia Trail property, Ms. Fischer's migraines have improved.

**<u>SUPPLEMENTAL RESPONSE DATED 12/22/22</u>:**

Plaintiffs are not making personal injury claims.  They are making claims *inter alia* for rental refunds due to breach of contract and breach of landlord-tenant duties, and for private nuisance damages that are recoverable by a home occupant, i.e., discomfort, annoyance, irritation, aggravation, and loss of use and enjoyment of a homestead, which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health.   As such, Plaintiffs do not expect to be putting on expert medical testimony to the effect that exposure to the poor housing conditions caused a specific illness for a special Plaintiff.  Accordingly, Plaintiffs believe medical-related discovery has limited relevance. Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year period prior to the filing of the current complaint for discoverable medical records wherein the Plaintiffs with physical or mental injuries will produce the names of their respective medical providers. Plaintiffs will sign authorizations to allow for the release of records from medical providers so long as Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating appropriately limited medical records discovery as agreed. With regard to names of medical providers, Plaintiffs provide the following information:

- John Fischer:

    o   Walter Reed Internal Medicine CL B.

- Minor child Jackson:

    o   Fort Belvoir Peds

    o   NAS Jax Family Medicine (Dr. Kuckle is a name recalled)

- Minor child Annaleigh:

    o   Fort Belvoir Peds

8

- o  NAS Jax Family Medicine (Dr Kuckle)

- o  North Florida Therapy Associates (for PT and OT)

- o  Beacon Pediatrics (for Neuro testing)

- Minor child Rhett:

  - o  Fort Belvoir Peds (Dr League Pascal)

  - o  Walter Reed Pediatric Neurosurgery (one MRI, 12-16 hours total)

  - o  Walter Reed Pediatric Neurology

  - o  Childrens National Neurosurgery (Dr. Myseros, Dr. Sanchez)

  - o  Childrens National Neurology (Dr. Difazio)

  - o  Childrens National Hematology Oncology (Dr. Packer, Dr. Bornhurst (sp?))

  - o  Childrens National Orthopedics

  - o  Childrens National PT and OT

  - o  Childrens National Neuro Opthamology

  - o  Nemour's Hematology Oncology (Dr. Sandler and Dr. Klawinski)

  - o  Nemour's Neurology

  - o  Nemour's Neuro Opthamology

  - o  Nemour's Orthopedics

  - o  Nemour's Psychology

  - o  Wolfsons Day Hospital and Radiology

  - o  North Florida Therapy Associates (PT and OT)

  - o  NAS JAX pediatrics (Dr. Akerele)

  - o  Angel Kids Pediatrics (will be going to a dermatologist)

- Ashley Fischer:

9

- o Fort Belvoir Family Medicine

- o Integrated Neurology (migraines)

- o NAS Jax Family Medicine

- o NeuroTek (migraines)

- o Dr. Sidey

Plaintiffs are also producing voluminous additional emails, social media documents, and related documents. These documents include information on the details of the family's complaints regarding the housing conditions and the property management services and the discomfort, irritation and annoyance the family suffered and speak for themselves.


3.      Please describe in detail, with more particularity than provided in Your Complaint, the medical facts and circumstances that have lead You to believe that exposure to the real property located at **9225 Soldier Road**, caused the harm and injuries you allege.

**<u>OBJECTIONS</u>**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case. This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for

one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs direct Defendants to their statements made in their response to interrogatory number 2 with regard to the nature of their claim and their legally recoverable harm and damages, and with regard to the responsiveness of the facts recited in their Complaint, as amended.

In August 2019, Chief Petty Officer Fischer executed a form lease with FBRC regarding the 9225 Soldier Road property. During the pertinent times, Chief Fischer was a contracting party under the lease, made rental payments pursuant to his BAH, and held a possessory and occupancy interest in this property and each FBRC unit the family was in.

Upon moving into the Soldier Road property, the family immediately noticed in August-September 2019 problems in the bathroom, which also apparently had been remediated previously. Mold was discovered in the shower area -- at the edge of the shower and behind the toilet.

Defendants tried to correct that mold problem by flood cutting the walls and painting the walls' affected studs with IAQ, which is not the recommended solution for mold per the EPA.

In short, even after having actual knowledge of the intolerable water intrusion and mold conditions in the first home, the Defendants failed to properly screen and prepare (including renovation and root cause determination if necessary) the second home so that it would not itself have mold when the family moved in. And the Defendants failed, still, to use proper practices to correct the mold problems once complained of.

A work order was submitted on August 27, 2019, which stated, "the AC is not cooling and the humidity in the home is 58%, recommended being 40-50 otherwise mold can grow."

The Fischers were not provided any details about the repair. The work order states that the problem was a malfunctioning compressor due to a bad capacitor. This was apparently replaced by the Defendants.

On November 30, 2019 the family noticed mold in the HVAC. Thus, once again, even after the circumstances at the first rental home, Defendants were continuing to allow similar circumstances to exist at the second home. These facts were unfair and deceptive, breached the lease and caused a private nuisance.

The discovery of mold in the HVAC required installation of a new HVAC unit. This time, the landlord determined to replace the HVAC, although the scope was limited. AJ Heating and Cooling was sent out to install a new HVAC inside and outside and to replace the exhaust pipe that was leaking from the roof/ceiling, on December 4, 2019.

Due to their experiences with the substandard, unsafe, and unsanitary housing provided to them at Fort Belvoir, in summer 2020 Chief Petty Officer Fischer requested orders to transfer, which were granted in November 2020. In December 2020 the family conducted a permanent change of station to Naval Air Station Mayport.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental response to interrogatory number 2.  And see supplemental documents that are being produced.

4.    State with precision the nature and symptoms of any physical, mental, and/or emotional injuries You allege any member of the Fischer Family suffered as a result of Defendants' alleged wrongdoing and what, if any, medical and/or healthcare treatment each family member sought or received.

**OBJECTIONS:**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.  This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor

is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

### RESPONSE:

Plaintiffs direct the Defendants to their comments made in their response to interrogatory number 2. As to medical records, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order.

### SUPPLEMENTAL RESPONSE DATED 12/22/22:

See supplemental response to interrogatory number 2. And see supplemental documents that are being produced. The family members suffered from the discomfort, annoyance, aggravation and irritation caused by a chronically bad housing situation. This is detailed in great length in their voluminous documents, which are being supplemented herewith. The Plaintiffs are not making a personal injury claim that will seek to prove by expert medical testimony that, for example, the water intrusion and mold conditions caused an illness to a family member. However, Plaintiffs are claiming that as a result of how Defendants misused their ownership and control over

the communities under the 50 year ground lease, the Plaintiffs as home occupants were subjected to an unreasonable and substantial interference with their ability to use and enjoy their leased property. The letters, written complaints and social media of the Plaintiffs provide additional detail in this regard. See supplemental documents being produced which include a narrative written statement by Ms. Fischer as well as a timeline of events, among other things.

5.    For each member of the Fischer Family, identify all pre-existing physical, mental, and/or emotional conditions, problems or difficulties affected by the same physical, mental, and/or emotional injuries identified in response to Interrogatory No. 4.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case. This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his

discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery.  However, broad medical discovery such as in a personal injury case is not appropriate herein.  Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs direct the Defendants to their comments made in their response to interrogatory number 2.  As to medical records, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order. Plaintiffs further refer Defendants to their Response to Interrogatory No. 7 and incorporate that response by reference herein.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental response to interrogatory numbers 2 and 4.  And see supplemental documents that are being produced.


7.      State whether any member of the Fischer Family has been physically, mentally and/or emotionally injured in any way since January 1, 2017, as a result of any accident and/or occurrence unrelated to the allegations set forth in the Complaint. If so, please describe:

a.      Who was injured;

b.      The injury;

c.      The date of injury;

d.      The nature of the injury; and

e.      How the individual incurred the injury.

**<u>OBJECTIONS</u>**

Plaintiff objects to the extent that the discovery request seeks information on unrelated injuries with no bearing or potential relevance to the case and seeks discovery that is not proportional to the needs of the case and is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the request is unduly burdensome and seeks confidential medical information.  Plaintiff further objects to the extent the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery.  However, broad medical discovery such as in a personal injury case is not appropriate herein.  Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

With regard to whether any member of the Fischer Family has been physically, mentally or emotionally injured since January 1, 2017, as a result of any matters unrelated to the allegations set forth in the Complaint, as amended, the Plaintiffs respond that obviously, the ongoing medical problems and issues in their family and particularly with their children are and were a source of ongoing stress. However, that level of stress was only heightened once the family encountered Defendants' reckless and harmful repair, maintenance and tenant service practices.

In further response, immediately upon moving in to the Kezia Trail residence, starting around November 2017, Ms. Fischer began to suffer from chronic migraines (weekly, approximately 3-4 days a week), as well as what she believed to be panic attacks. Ms. Fischer sought treatment in March of 2019 for treatment for her anxiety and migraines by her primary care physician and neurologist. As further detail in that regard, the Plaintiffs direct the Defendants to their medical records, which they will cooperate to produce under a confidentiality protective order.

In further response, subsequent to the family moving into the Kezia Trail residence, on December 24, 2018, the Fischer's youngest son, Rhett Henry Monroe Fischer was diagnosed with cancer. The following summer, the Plaintiffs became aware of the presence of harmful mold toxins in their residence, through laboratory-confirmed testing. Rhett's cancer diagnosis has caused additional physical, mental and emotional injury to all members of the Fischer family. Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

18

See supplemental response to interrogatory numbers 2 and 4. And see supplemental documents that are being produced.

9.      Please describe each and every location in **9225 Soldier Road** which You believe were subject to moisture damage, water intrusion, or mold, including a description of your findings and the date(s) upon which you observed such condition.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request seeks information already in the possession of the Defendants and/or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The burden of providing information sought by this interrogatory is substantially the same or less for Defendant as for Plaintiff. Plaintiff further objects that the request is unduly burdensome in so far as it seeks Plaintiff to recall each and every date.

**RESPONSE:**

See response to interrogatory number 2. And, see documents being produced.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental documents that are being produced.

16.      Please Identify all other Fort Belvoir residents (former or current) with whom You have communicated regarding the conditions at issue, Your claims in this lawsuit, housing conditions at Fort Belvoir, the Defendants, Your advocacy efforts, and/or congressional hearings.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential

and private communications that are protected under the Military Housing Privatization Initiative

Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects

to the extent that the discovery requests seeks to intrude upon confidential and private

communications were shared on a private Facebook group with an expectation of privacy by

individuals who feared, and still fear, retaliation at the hands of the Defendants and via their

influence over the military and undo command influence. To the extent that the discovery request

seeks public social media information, Plaintiff objects to the extent that the information sought is

as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This

request also intrudes the attorney-client privilege and attorney work- doctrine protections by

requiring the disclosure of privileged communications and information relating to attorney

strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague

and unduly burdensome.

### RESPONSE:

Plaintiff responds and states that Plaintiffs have communicated with several Fort Belvoir

residents and/or former Fort Belvoir residents. The identities of those residents are ascertainable

from the communications and social media posts that are being produced herewith. Plaintiffs

further respond that they communicated frequently with the former residents of the 9547 Kezia

Trail residence. Screenshots of Plaintiffs' conversations with the former residents are being

produced herewith, along with other communications between the Plaintiffs and other Fort Belvoir

residents.

### SUPPLEMENTAL RESPONSE DATED 12/22/22:

See supplemental documents that are being produced.   Plaintiff Ms. Fischer has

communicated with many other affected servicemember families both at Fort Belvoir and

elsewhere. Plaintiff is producing emails and social media that Plaintiffs were able to locate after performing a reasonable search, and which are being designated confidential because Plaintiffs do not want any of the families that relayed housing complaints to them to be in any danger of retaliation for sharing their concerns. These documents identify the names of relevant individuals.

17.    Please Identify all other individuals, other than Your lawyers, with whom You have communicated regarding the conditions at issue, Your claims in this lawsuit, housing conditions at Fort Belvoir, the Defendants, Your advocacy efforts, and/or congressional hearings.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence. To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

**RESPONSE:**

Plaintiffs refer Defendants to the communications and documents being produced herewith, which identify the various individuals and entities with which Plaintiffs have communicated regarding the conditions at Fort Belvoir. Plaintiffs further respond that they communicated frequently with members of the legislature and their staff, as well as certain media outlets. Plaintiffs refer Defendants to Plaintiffs' response to Interrogatory No. 24 and incorporate that answer by reference herein.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental documents that are being produced and see supplemental response to interrogatory number 16.


18.    Please describe any and all of Your Internet or social media activity regarding Your health conditions, Your children's health conditions, the housing complaints at issue in this lawsuit, the lawsuit itself, Your advocacy efforts, the Defendants, and/or military housing at Fort Belvoir, including but not limited to, any Twitter, Instagram, LinkedIn, Facebook, Facebook messenger, and/or TikTok posts, or participation or conversation in any online public forums.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence.  To the extent that the discovery request

seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

**RESPONSE:**

Plaintiffs respond and state that the Plaintiffs utilize various forms of social media for personal purposes, and are involved in social media-based advocacy groups related to the poor housing conditions at Fort Belvoir. Plaintiffs refer Defendants to the social media posts and communications that are being produced herewith, which detail the persons with whom Plaintiffs have communicated with and the substance of the communications.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental documents that are being produced and see supplemental response to interrogatory number 16.


25.     If You have ever been involved in any other legal action, either as plaintiff or defendant, please state the date and place each such action was filed, giving the name of the court, the name(s) of other parties involved, a description of the nature of the action, and the results and/or final disposition of the action.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request seeks information that is vague, overbroad, and unduly burdensome on unrelated legal matters with no bearing or potential

23

relevance to the case and seeks discovery that is not proportional to the needs of the case.

**RESPONSE:**

Plaintiffs respond and state that approximately ten years ago, Ashley Fischer was a party to legal proceedings involving child custody and child support for her oldest child, Jackson Emory Bradley, DOB 09/27/2007. Other parties to the proceeding included Jackson's father, Ashley's former partner. Plaintiffs further respond that John Fischer was a party to a legal proceeding in approximately 2001 related to charges of driving under the influence. These charges were subsequently expunged. Upon execution of a confidentiality protective order, Plaintiffs agree to provide relevant court-related documents that detail the nature of the aforementioned proceedings.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

Plaintiffs are searching to determine whether they still have court documents for any prior proceedings and will supplement this response.

Dated: December 23, 2022.

s/John Hughes
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

Joel R. Rhine, NC State Bar No. 16028
Martin A. Ramey, NC State Bar No. 33617
Ruth A. Sheehan, NC State Bar No. 48069
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Phone: 910-772-9960

jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
RAS@rhinelawfirm.com
Counsel for Plaintiffs

Mona Lisa Wallace, NC Bar No. 009201
John Hughes, NC State Bar No. 22126
WALLACE AND GRAHAM, PA.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Counsel for Plaintiffs

John A. Yanchunis, FL Bar No. 324681
Kenya Reddy, FL Bar No. 459933
MORGAN & MORGAN LAW FIRM
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: 813-223-5505
JYanchunis@ForThePeople.com
KReddy@ForThePeople.com
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2022, a copy of the foregoing

was served via e-mail on all counsel of record, including:

Kathryn E. Bonorchis #80007
Joseph Doukmetzian, 91685
Lewis, Brisbois, Bisgaard & Smith, LLP
100 Light Street, Suite 1300
Baltimore, Maryland, 21202
Kathryn.Bonorchis@lewisbrisbois.com
Joseph.Doukmetzian@lewisbrisbois.com

Richard G, Morgan, Admitted *Pro Hac Vice*
Tina Syring, Admitted *Pro Hac Vice*
Emily Suhr, Admitted *Pro Hac Vice*
Lewis, Brisbois, Bisgaard & Smith, LLP
Wells Fargo Center
90 South 7th Street, Suite 2800

25

Minneapolis, Minnesota 55402
Richard.Morgan@lewisbrisbois.com
Tina.Syring@lewisbrisbois.com
Emily.Suhr@lewisbrisbois.com

*Attorneys for Defendants*

Dated: December 23, 2022.

s/ John Hughes
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| Chief Petty Officer JOHN FISCHER and | * | |
| ASHLEY FISCHER, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. 1:22-cv-00286 |
| | * | |
| FORT BELVOIR RESIDENTIAL | * | |
| COMMUNITIES LLC, et al. | * | |
| | * | |
| Defendants | * | |

### PLAINTIFF'S 12/23/22 SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO JOHN FISCHER

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff John Fischer hereby serves supplemental responses to the below Interrogatories that were served on October 24, 2022 by Defendant Fort Belvoir Residential Communities LLC ("FBRC").

16.     Please describe, with greater detail than provided in the Complaint, all physical, emotional, and mental injuries that You claim are a result of the environmental conditions and/or actions of Defendants alleged in the Complaint, including a statement of which injuries you allege have healed, which have not yet healed, and which you allege are permanent.

### OBJECTIONS

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one

1

or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

The complaint, as amended, is very detailed. See also spouse's responses to interrogatories.

**12/23/22 SUPPLEMENTAL RESPONSE:**

See supplemental documents being produced herewith. Mr. Fischer suffered from discomfort, aggravation, irritation, concern and loss of use and enjoyment of his property which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health. The nature of the physical, emotional, and mental injuries that the family experienced is reflected by their extensive documentation, including that produced herewith. Mr. Fischer experienced a reasonable fear and concern regarding the

safety and health dangers posed by the living conditions for his family.  Obviously, with leaving the Belvoir housing, the Fischers' concerns were to some extent alleviated.

17.     Identify each and every element of damages You seek in this Action and the amount of each element of damages. For expenses incurred, including but not limited to medical costs, medication costs, counseling services, and any related liens, please list the person or institution generating the bill, the amount paid, and the reason for the bill. For future medical expenses, please state the date you expect to incur the expense, a brief description of the goods or services that you claim will be required in the future, the expected amount of the expense, and the identities of those who indicated such expenses will be necessary.

### **OBJECTIONS**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome,

harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs have not yet calculated their damages.

**12/23/22 SUPPLEMENTAL RESPONSE:**

Plaintiffs will cooperate with Defendants in the event that Defendants desire to seek to obtain Plaintiffs' medical records and medical bills. Plaintiffs will produce medical records that are in their possession. Plaintiffs do not expect to be putting on expert medical testimony to the effect that exposure to the poor housing conditions caused a specific illness for a special Plaintiff. Accordingly, Plaintiffs believe medical-related discovery has limited relevance. Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year period prior to the filing of the current complaint for discoverable medical records wherein the Plaintiffs with physical or mental injuries will produce the names of their respective medical providers. Plaintiffs will sign authorizations to allow for the release of records from medical providers so long as Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating appropriately limited medical records discovery as agreed. With regard to names of medical providers, Plaintiffs will provide that information if the Plaintiff Fishers have physical or mental injuries they will be presenting as damages.

4

Dated: December 23, 2022.

s/John Hughes
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

Joel R. Rhine, NC State Bar No. 16028
Martin A. Ramey, NC State Bar No. 33617
Ruth A. Sheehan, NC State Bar No. 48069
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Phone: 910-772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
RAS@rhinelawfirm.com
Counsel for Plaintiffs

Mona Lisa Wallace, NC Bar No. 009201
John Hughes, NC State Bar No. 22126
WALLACE AND GRAHAM, PA.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Counsel for Plaintiffs

John A. Yanchunis, FL Bar No. 324681
Kenya Reddy, FL Bar No. 459933
MORGAN & MORGAN LAW FIRM
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: 813-223-5505
JYanchunis@ForThePeople.com
KReddy@ForThePeople.com
Counsel for Plaintiff

5

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2022, a copy of the foregoing

was served via e-mail on all counsel of record, including:

> Kathryn E. Bonorchis #80007
> Joseph Doukmetzian, 91685
> Lewis, Brisbois, Bisgaard & Smith, LLP
> 100 Light Street, Suite 1300
> Baltimore, Maryland, 21202
> Kathryn.Bonorchis@lewisbrisbois.com
> <u>Joseph.Doukmetzian@lewisbrisbois.com</u>
>
> Richard G, Morgan, Admitted *Pro Hac Vice*
> Tina Syring, Admitted *Pro Hac Vice*
> Emily Suhr, Admitted *Pro Hac Vice*
> Lewis, Brisbois, Bisgaard & Smith, LLP
> Wells Fargo Center
> 90 South 7th Street, Suite 2800
> Minneapolis, Minnesota 55402
> Richard.Morgan@lewisbrisbois.com
> Tina.Syring@lewisbrisbois.com
> Emily.Suhr@lewisbrisbois.com
>
> *Attorneys for Defendants*

Dated: December 23, 2022.

> s/John Hughes
> David Hilton Wise, VA Bar No. 30828
> Joseph M. Langone, VA Bar No. 43543
> WISE LAW FIRM PLC
> 10640 Page Avenue, Suite 320
> Fairfax, Virginia 22030
> Phone: 703-934-6377
> dwise@wiselaw.pro
> jlangone@wiselaw.pro
> Counsel for Plaintiffs

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| Chief Petty Officer JOHN FISCHER and | * | |
| ASHLEY FISCHER, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. 1:22-cv-00286 |
| | * | |
| FORT BELVOIR RESIDENTIAL | * | |
| COMMUNITIES LLC, et al. | * | |
| | * | |
| Defendants | * | |

**PLAINTIFF'S 12/23/22 SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES TO RAVEN ROMAN**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Raven

Roman hereby serves her supplemental responses to the below Interrogatories that were served on

October 24, 2022 by Defendant Fort Belvoir Residential Communities LLC ("FBRC").


2.     Please describe in detail, with more particularity than provided in Your Complaint,

the medical facts and circumstances that have lead You to believe that exposure to the real property

located at **5200 Stable Court**, caused the harm and injuries you allege.

**OBJECTIONS:**

Plaintiff objects to the extent that the discovery request implicates expert testimony

given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects that the

request is vague, overbroad, unduly burdensome, and seeks confidential medical information.

Plaintiff objects to the extent the discovery request implies or suggests that only by putting on

medical expert testimony can legally cognizable injuries or damages be proven in this case.  This

request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring

1

the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**<u>RESPONSE:</u>**

The Plaintiffs do not merely allege that "exposure" to the "real property" caused the harm and damage they allege, but more specifically, that aside from any personal injury in the form of diagnosable illness, the family suffered a loss of the ability to use and enjoy their property (a paid-for leasehold) due to Defendants' substantial and unreasonable interference with their ability to use and enjoy that property. The injury recoverable under this private nuisance claim is distinguishable from personal injury damages. Further, the Plaintiffs also allege that Defendant's poor and unlawful conduct extended beyond the physical conditions in the home to also include

2

the bullying and misleading, unfair and deceptive tenant service practices by the property manager. Thus the "medical facts and circumstances" do not account for relevant categories of Plaintiffs' legally cognizable harm and damages.

Further, as stated in the Complaint as amended, the Plaintiffs have not as of this time asserted a medical-causation personal-injury claim. Rather, as therein stated, they reserve the right to amend the complaint as the case proceeds in the event they determine there is evidence of medical causation of personal injury or illness as a result of the mold and other household indoor air exposures, meeting the applicable Virginia state-law causation standard for an individual personal injury claim.

While the discovery request seeks "more particularity than provided in Your Complaint," in fact the Complaint, as amended, provides detailed responsive information, and accordingly, where appropriate that information is included below.

In May 2018, the Romans applied to rent family military housing at Fort Belvoir. On May 17, 2018, Chief Warrant Officer Roman executed a form lease with FBRC regarding the 5200 Stable Court property. During the pertinent times, Chief Warrant Officer 3 Roman was a contracting party under the lease, made rental payments pursuant to his BAH, and held a possessory and occupancy interest in the property. During the pertinent times, Ms. Roman held a possessory and occupancy interest in the property. The Roman family moved into the home, which was located in the Villages at Belvoir, in Woodlawn Village.

The Roman family experienced and noticed serious issues involving the safety, sanitation, and condition of the property upon move-in. As set forth in their move-in inventory checklist, immediately upon moving into the home the Romans observed issues involving pests, old carpets (not new as noted by Defendants), water intrusion in the garage, mold on the drywall over the

3

garage door, mold on the sealant on the sink, and in the cabinetry underneath the sink, lifting vinyl plank flooring, and rusty plumbing.  However, Defendants performed merely a cursory superficial response to Plaintiffs' requests and complaints as to the housing.

On May 18, 2018, the Romans reported pest issues: ants and spiders were discovered in the home. Ants were entering throughout the entire first floor of the home and through cracks on the banister in the hallway on the second level of the home. Carpenter ants were also discovered in the upstairs bedroom (daughter's room) coming in through the window and crawling on the walls and ceilings.  In response, Defendants treated for pests but said they were unable to fully treat for ants due to "heavy rain."

The Romans were not able to move their personal belongings to their bedrooms upon move-in until the following week due to the unsanitary and unsafe condition of the carpets. On May 22, 2018, the Romans submitted a request for a steam cleaning of the carpets. They discovered thumbtacks and nails throughout the entire second level of the home, in addition to stains, jewelry, and food left behind by previous tenants.  Following the call, the vendor arrived with a household vacuum to clean the second level of the home. That was a cursory superficial response to their request and to the situation. Defendants were not providing the excellent housing product that they had promised to the Military in order to win this MHPI Project for which they were paid.

The Romans submitted a second maintenance request for cleaning.  The carpets were steam cleaned during the second visit.  Nonetheless, the vendor insisted the carpets were "new" and did not require a cleaning.  Plaintiffs have provided in the Complaint and will produce herewith photographs which showed the ants, thumbtacks, and nails.

4

On May 31, 2018, the Villages at Belvoir maintenance person arrived to repair holes in the walls and to paint the garage. The technician painted over the mold over the garage door and water intrusion stains on the wall.

On June 4, 2018, for a second time, Mrs. Roman reported the water intrusion on the wall, a possible roof leak, and the exterior downspout flooding the backyard and air conditioning unit. After making that complaint, she was never contacted.

On June 13, 2018, Mrs. Roman reported, for a third time, the water intrusion and roof leak. On June 14, 2018, a work order was created for this maintenance request. But there was no further investigation as to the cause. No work occurred. Then the work order was marked complete. The Plaintiffs have provided in the Complaint photographs showing the mold and water intrusion.

During the next three months, there were many additional issues. Meanwhile, CWO3 Roman was required to report to Warrant Officer Advanced Course (WOAC) on July 12, 2018. Mrs. Roman and her three children resided in the home during that time. CWO3 Roman was less available to protect them or help them with household environmental issues. Water intrusion remained a substantial issue. During all of this time, FBRC had actual knowledge that this was a problem home. And that there were young children. Mrs. Roman reported a leak under the kitchen sink, a leaking toilet, pest issues, and HVAC problems.

The Romans began to notice high levels of moisture in the kitchen and other areas which attracted a panoply of pests including slugs, silverfish, carpet beetles, and booklice. They noticed a consistent odor, a "rotting/mildew smell", coming from under the kitchen sink and cabinets that became more pungent when it rained. Mrs. Roman reported the odor several times. Slugs were found under the cabinets, in the dishwasher, and crawling on the kitchen floor. The presence of slugs is indicative of moisture, of moisture intrusion, and of housing defects. Eventually Mrs.

Roman and her children were unable to use any of the bathrooms due to unsuccessful pest control treatments and an infestation of booklice that quickly spread throughout the home.

On June 18, 2018 (2nd report) the Romans reported carpenter ants located in the daughter's room. Defendants treated for ants twice. The issue subsided but continued. Defendants knew that spraying for ants would not correct a problem whose root cause was really something like structural defects or improper gaps and openings.

Also on June 18, 2018 the Romans reported "mold in window". The work order was marked complete with no further investigation. The Plaintiffs have provided and will produce photos showing the ants and the mold.

On July 25, 2018, the Romans reported "small bugs" in the bathroom (silverfish and booklice). Defendants had Eagle Pest Control treat the inside of the home. Plaintiffs took photographs of the booklice and silverfish.

On July 30, 2018, the Romans reported for a fourth time, "water is entering through side wall from outside living area." In response, shingles were repaired. However, drywall was not removed, and no further investigation was made into the root cause of evident water damage to the interior of the roof or garage wall. Plaintiffs took photos of the water damage.

On July 31, 2018 (2nd report) the Romans reported "rotting, mildew smell coming from the sink and up under the cabinets." However, maintenance did not investigate further. Defendants denied the existence of the smell. The Plaintiffs took photographs of water staining under the sink, which is likely evidence of mold and mildew.

On August 7, 2018 (2nd report) the Romans reported bugs in the bathroom. In response, the Defendants treated inside the home. They did not do more. On August 28, 2018 (3rd report) a work order was placed by the Romans for the presence of bugs in the second hallway bathroom,

6

under the kitchen sink and in the cabinets.  On August 28, 2018 (4th report) the Romans also reported crawling insects, and silverfish in the entire unit.  Defendants retained Eagle Pest Control, who merely treated with aerosol spray.  The exterminator with Eagle Pest Control advised the Romans that he notified the Villages at Belvoir there was a humidity issue within the home during the initial pest control treatments in the home.  During this time, under Defendants' intentional business model, they chose to periodically pay a pest person to come spray for bugs, over fixing the root cause. This was strictly a cost decision. Defendants knew young children lived in the unit and knew that all else being equal, it is more of a health risk to spray insecticides inside homes, than not to.

Also, on August 28, 2018 (3rd report) the Romans reported "moisture under the kitchen sink and dishwasher."  Defendants' maintenance supervisor came to the home. He got a positive reading for moisture under the sink, using some type of test or instrument.  All he did was that he sprayed the area with an antimicrobial spray and reported everything was fine.

In fact, everything was not fine. Defendants, being the very ones hearing the tenant requests and complaints, and periodically sending out the pest men, knew that the problem would continue in the future as it had in the past. Incoming new tenants did not have this knowledge but Defendants did. Merely occasionally sending a low-paid service person to take the quickest, lowest-cost, most temporary and superficial approach – wiping off mold, painting over mold, wiping off moisture, spraying for insects – was a business practice that increased risks of adverse health effects to infants and children, as well as pregnant mothers among the tenant census at any given time.

On September 3, 2018, the Romans reported water leaking in the laundry area from the AC unit.  In response, Defendants appeared to have wrapped putty around the pipe that was leaking. The Romans also began experiencing medical issues around this time.  All three children became

7

ill. They complained of rashes, upper respiratory infections, congestion, a hacking cough.  Raven Roman suffered from fatigue, headaches, drastic weight loss, vision problems, rashes, light sensitivity, high blood pressure, and joint pain.

The problems became so severe that the Romans requested a new home or hotel accommodations.

Defendants' response on August 31, 2018, was to say that "we have not identified any concerns in your home that would prevent you from staying in the home."

Mrs. Roman had no choice but to move out of the home and into a hotel with her three children on Labor Day 2018. The Roman family incurred out-of-pocket expenses to do so.

On September 4, 2018, the Romans received a phone call from the maintenance supervisor used by Defendants. He stated that the Romans could no longer enter the premises without an escort due to moisture that was found behind the dishwasher. The Romans were never provided a clear explanation or disclosure of the findings of what did or did not exist behind the dishwasher. Mrs. Roman was very concerned about what could be the potential impacts of whatever was really in the house, as to her children.  Defendants had a duty to clearly and contemporaneously fully disclose to the tenants whenever there is a known problem to the home that could endanger the health of children.  Prior to being locked out of the home that day by Defendants, Mrs. Roman returned to the home to retrieve personal items for her children.  While there, she pulled the dishwasher out and found a black trash bag taped to the wall.

Chief Roman requested support from his 1st SGT. and CPT in his absence to meet his wife to observe her findings.  They arrived and witnessed the mold found behind the dishwasher.  The family documented this with photos.  The Romans had the mold present behind the dishwasher tested on September 11, 2018.  The tests revealed the presence of Stachybotrys, a toxic mold.

The Roman family was displaced from September 2 to September 15, 2018.  The Romans left 5200 Stable Court to stay at the Residence Inn in Springfield, VA from September 2-September 4, 2018, where they paid out of pocket for 3 nights.  This series of events violated the Defendants' duty to provide replacement housing at no expense under Va. Code § 55.1-1231 "Where mold condition in the dwelling unit materially effects the health or safety of any tenant…"The Landlord shall provide the tenant with either (i) a comparable dwelling unit, as selected by the landlord, at no expense or cost to the tenant or (ii)a hotel room, as selected by the landlord, at no expense or cost to the tenant."  Defendants then moved the family to the Staybridge Suites from September 5 to September 15, 2018.

Subsequently, after several meetings with management, Defendants moved the Romans to 5493 Jadwin Loop.  The Defendants arranged for a moving company to move the Romans' possessions from 5200 Stable Court property to 5493 Jadwin Loop.

All of these events caused intrusion on the family's ability to use and enjoy their leased home and their occupancy property interest, causing aggravation, discomfort, annoyance and irritation.

On September 13, 2018, the day of the move, The Romans discovered mold had visibly spread throughout the entire home at 5200 Stable Court.  The Defendants' maintenance supervisor took some of the Romans' personal possessions from a closet which had visible mold on the ceiling and put them into a plastic trash bag to be "dry cleaned."  Ultimately Defendants disposed of these belongings and did not clean them.  Mrs. Roman's subsequent inquiries as to the status of these belongings were ignored, and the personal property was never returned.  Defendants gave them a partial reimbursement of a portion of rent and items in the closet in November 2018.

9

On March 18, 2019, the Roman family requested reimbursement for their belongings that were transported to the home to 5493 Jadwin Loop from 5200 Stable Court which had been impacted by mold.  This request was denied.

**12/23/22 SUPPLEMENTAL RESPONSE**

Plaintiffs are not making personal injury claims.  They are making claims *inter alia* for rental refunds due to breach of contract and breach of landlord-tenant duties, and for private nuisance damages that are recoverable by a home occupant, i.e., discomfort, annoyance, irritation, aggravation, and loss of use and enjoyment of a homestead, which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health.   As such, Plaintiffs do not expect to be putting on expert medical testimony to the effect that exposure to the poor housing conditions caused a specific illness for a special Plaintiff.  Accordingly, Plaintiffs believe medical-related discovery has limited relevance.  Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year period prior to the filing of the current complaint for discoverable medical records wherein the Plaintiffs with physical or mental injuries will produce the names of their respective medical providers. Plaintiffs will sign authorizations to allow for the release of records from medical providers so long as Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating appropriately limited medical records discovery as agreed. With regard to names of medical providers, Plaintiffs provide the following information:

The Romans are providing copies of medical records that they have.  From these records can be determined the names of medical providers.  If Defendants desire to use this information and these names to seek additional medical records, Plaintiffs will cooperate.

3.    Please describe in detail, with more particularity than provided in Your Complaint, the medical facts and circumstances that have lead You to believe that exposure to the real property located at **5493 Jadwin Loop**, caused the harm and injuries you allege.

**OBJECTIONS:**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.  This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery.  However, broad medical discovery such as in a

11

personal injury case is not appropriate herein.  Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**<u>RESPONSE:</u>**

Plaintiffs direct Defendants to their statements made in their response to interrogatory number 2 with regard to the nature of their claim and their legally recoverable harm and damages, and with regard to the responsiveness of the facts recited in their Complaint, as amended.

On September 12, 2018, Chief Warrant Officer Roman executed a form lease with FBRC regarding the 5493 Jadwin Loop property.  After moving to the 5493 Jadwin Loop property, the Roman children suffered from chronic ear infections, chronic coughs, upper respiratory illness, sore throats, headaches, congestion, developmental and behavioral health issues, and other adverse health effects.

From November 2018 thru March 23, 2019, the Roman family reported, and work orders were submitted for issues related to, the deck, door, shingles, HVAC, locks, lighting, windows, and pest control. This is discussed in further detail below.

On September 26, 2018, the Romans reported carpet beetles in the kitchen and upstairs bathroom. Defendants conducted a pest control treatment.  The family took photographs showing the carpet beetles in the Roman home.

On October 2, 2018 the Romans reported a sewage-type odor in the basement. In response, Defendants sent a maintenance technician who said he could not see or smell anything. There was no further investigation.  On November 14, 2018 the Romans reported that their daughters' bedroom smelled like mold and there appeared to be visible mold on the windows.  They also reported mold on the front door, two windows that did not shut properly in the living room, and the absence of weatherstripping needed for all.  In response, their daughters' window was cleaned

12

with bleach and painted, the weather strip was placed over the mold on the front door, and the remaining requests were never completed. The family kept photos showing the mold in the windows.

On January 29, 2019 (1st report) the Romans reported the existence of wood on the bottom of the entryway door which was "rotting/chipping away." This was not repaired. The Plaintiffs' photographs show the rotting wood on the entryway door.

On February 8, 2019, the Romans reported gaps between the baseboard and floors and rusty nail pops throughout the entire home. In response, Defendants caulked and patched the nail pops. On February 27, 2019, (2nd report), the Romans reported deterioration of the entryway door due to rot. The door was replaced. On February 28, 2019, the Romans reported that the ducts were dirty, and giving off an odor so they requested a duct cleaning. Defendants sent Americlean to conduct a duct cleaning. The duct cleaning was inadequate. The HVAC/ductwork problem root cause remained unconfirmed.

On March 3, 2019, the Romans reported tree bugs in the bathroom. Defendants scheduled pest control to treat the area. On March 9, 2019, the Romans reported a rotten windowsill. In response, Defendants painted over the rotting wood on the window. No further investigation was made to check for water intrusion. The Plaintiffs' photographs show the rotten windowsill.

Subsequently, on March 26, 2019, the Romans requested that Defendants inspect, repair, and remediate the Jadwin Loop property due to visible mold present on the beam in the attic, mold-related problems with the kitchen range hood, issues with the HVAC, and condensation on the windows throughout the home and in the laundry area where the utility closet was located. In response, the mold issues related to the attic beam and the kitchen were purportedly remediated. The HVAC was not properly remediated. The cause of the condensation in the home was never

13

addressed by Defendants at any time. The other issues reported were addressed in cursory fashion, but the causes of the issues were not properly determined or repaired by Defendants.

On March 29, 2019, the Romans reported mold in the attic. Remediation was purportedly completed by PBI Restoration on April 16, 2019. The Plaintiffs' photographs show the mold in the attic.

On April 25, 2019, the Romans reported that the first level bathroom had what appeared to be previous water damage under the cabinet that was painted over. Defendants replaced the cabinet but left the corroded plumbing. Photographs show the previous water damage under the cabinet.

On July 8, 2019, the Romans reported condensation throughout the entire home on windows and in the dryer in the laundry room. A work order in that regard was opened by Defendants. Defendants had no actual work done to fulfill the work order. Defendants then marked the work order complete and closed it. Maintenance was never scheduled to assess the actual problem. On information and belief, that very work order was included among the supporting data for Defendants' incentive award request to the government. Photographs show the condensation in the windows and dryer area of the laundry room.

An assessment of the root cause at that time might and, Plaintiffs allege, would have determined that under all the facts and circumstances, Defendants should not have been letting out that home to any family at that time. First, Defendants should have conducted a root cause assessment. If this meant keeping the home out of the active inventory being rented out to families, then so be it. Then, if the result of the assessment meant that the entire HVAC system had to be replaced, then Defendants should have replaced it. If the assessment mean that the whole unit had to be renovated, or torn down and replaced, Defendants had the duty so to perform. This was because they had an integrated duty to assess, manage, repair when needed, maintain when needed,

14

replace entire systems when needed, renovate the home when needed, build new homes when needed.

On July 19, 2019, the Romans reported water leaking from the range hood. A maintenance technician came but advised there was no repair needed. In fact, on information and belief, a repair was needed. The range hood continued leaking. The Romans were unable to use their stove. Presumably for that tenant interaction, FBRC opened, marked successfully fulfilled, closed, and used as a basis for BAH payments and incentive awards, a work order.

On July 25, 2019, the Romans again reported the leak and the presence of mold on the range hood. The Romans were unable to use their stove until the range hood and duct were purportedly fixed, or remediated, on July 26, 2019.  After the "remediation," Mrs. Roman discovered the duct was never replaced.

On August 21, 2019, the Romans discovered the presence of mold and rust on the vent register in the laundry area and in the upstairs rooms. They also discovered condensation and water accumulating in the dryer. The Romans were displaced and moved to a hotel, from August 21 to August 30, 2019.  Photographs show some of the mold, rust and condensation.

On August 23, 2019, the Romans stopped by their home and discovered that proper containment was not set up to ensure personal belongings were not contaminated. The AC unit was left running by Defendants. Plaintiffs' photos depict the improper "containment" attempt.

On August 25, 2019, the Romans discovered that the ducts were not encapsulated properly. The retained photographs show the conditions inside of the ducts.

The further that the Romans looked into the condition of their home, the more problems that they found. They had no recourse, in their minds, except to complain and make requests to the property manager, the landlord. However, the landlord clearly had no intention to alleviate the

slumlord conditions. Rather, the landlord depended on a loss-avoidance strategy that was unfair and deceptive.

As a result of their exposure to conditions in the two Fort Belvoir military housing units provided by Defendants, the two Roman daughters suffered from chronic coughs, chronic ear infections, bronchitis and pneumonia.  The youngest daughter, who is developmentally delayed and in special education classes in Fairfax County Public Schools, developed asthma. She requires ongoing therapy.

As a result of the conditions in both of the Fort Belvoir housing units provided by Defendants, the Romans decided to move off base Labor Day 2019 to 9162 Power House Road in Lorton, VA. The Romans now reside in North Carolina.

### 12/23/22 SUPPLEMENTAL RESPONSE

See supplemental response to interrogatory number 2.  And see supplemental documents that are being produced.


4.      State with precision the nature and symptoms of any physical, mental, and/or emotional injuries You allege any member of the Roman Family suffered as a result of Defendants' alleged wrongdoing and what, if any, medical and/or healthcare treatment each family member sought or received.

### OBJECTIONS:

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on

medical expert testimony can legally cognizable injuries or damages be proven in this case. This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs direct the Defendants to their comments made in their response to interrogatory number 2. As to medical records, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order.

**12/23/22 SUPPLEMENTAL RESPONSE**

See supplemental response to interrogatory number 2. And see supplemental documents that are being produced. The family members suffered from the discomfort, annoyance, aggravation and irritation caused by a chronically bad housing situation which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health. This is detailed in great length in their voluminous documents, which are being supplemented herewith. . The Plaintiff's are not making a personal injury claim that will seek to prove by expert medical testimony that, for example, the water intrusion and mold conditions caused an illness to a family member. However, Plaintiffs are claiming that as a result of how Defendants misused their ownership and control over the communities under the 50 year ground lease, the Plaintiffs as home occupants were subjected to an unreasonable and substantial interference with their ability to use and enjoy their leased property. The letters, written complaints and social media of the Plaintiffs provide additional detail in this regard. See supplemental documents being produced.


5.      For each member of the Roman Family, identify all pre-existing physical, mental, and/or emotional conditions, problems or difficulties affected by the same physical, mental, and/or emotional injuries identified in response to Interrogatory No. 4.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case. This

18

request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. This request is also vague, overbroad, and unduly burdensome because it seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times.

Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs direct the Defendants to their comments made in their response to interrogatory number 2. As to medical records, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order.

19

## 12/23/22 SUPPLEMENTAL RESPONSE

See supplemental response to interrogatory numbers 2 and 4. And see supplemental documents that are being produced.

7.     State whether any member of the Roman Family has been physically, mentally and/or emotionally injured in any way since January 1, 2017, as a result of any accident and/or occurrence unrelated to the allegations set forth in the Complaint. If so, please describe:

a.     Who was injured;

b.     The injury;

c.     The date of injury;

d.     The nature of the injury; and

e.     How the individual incurred the injury.

## OBJECTIONS

Plaintiff objects to the extent that the discovery request seeks information on unrelated injuries with no bearing or potential relevance to the case and seeks discovery that is not proportional to the needs of the case and is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the request is unduly burdensome and seeks confidential medical information. Plaintiff further objects to the extent the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

With regard to whether any member of the Roman Family has been physically, mentally or emotionally injured since January 1, 2017, as a result of any matters unrelated to the allegations set forth in the Complaint, as amended, the Plaintiffs respond that obviously, the ongoing medical problems and issues in their family and particularly with their children are and were a source of ongoing stress. However, that level of stress was only heightened once the family encountered Defendants' reckless and harmful repair, maintenance and tenant service practices.

In further response, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order.

**12/23/22 SUPPLEMENTAL RESPONSE**

See supplemental response to interrogatory numbers 2 and 4. And see supplemental documents that are being produced.

21

9.    Please describe each and every location in **5493 Jadwin Loop** which You believe were subject to moisture damage, water intrusion, or mold, including a description of your findings and the date(s) upon which you observed such condition.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request seeks information already in the possession of the Defendants and/or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The burden of providing information sought by this interrogatory is substantially the same or less for Defendant as for Plaintiff. Plaintiff further objects that the request is unduly burdensome in so far as it seeks Plaintiff to recall each and every date.

**RESPONSE:**

See response to interrogatory number 2.  And, see documents being produced.

**12/23/22 SUPPLEMENTAL RESPONSE**

See supplemental documents that are being produced.


16.    Please Identify all other Fort Belvoir residents (former or current) with whom You have communicated regarding the conditions at issue, Your claims in this lawsuit, housing conditions at Fort Belvoir, the Defendants, Your advocacy efforts, and/or congressional hearings.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects

22

to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence.  To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

### **RESPONSE:**

Plaintiff refers Defendants to the social media communications and documents produced herewith, which detail the persons Plaintiff communicated with and the nature of the communication.

### **12/23/22 SUPPLEMENTAL RESPONSE**

See supplemental documents that are being produced.  Plaintiff Ms. Roman has communicated with many other affected servicemember families both at Fort Belvoir and elsewhere.  Plaintiff is producing emails and social media that Plaintiffs were able to locate after performing a reasonable search..  These documents identify the names of relevant individuals.

17.    Please Identify all other individuals, other than Your lawyers, with whom You have communicated regarding the conditions at issue, Your claims in this lawsuit, housing conditions at Fort Belvoir, the Defendants, Your advocacy efforts, and/or congressional hearings.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence. To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

**RESPONSE:**

Plaintiff refers Defendants to the relevant documents and communications being produced herewith which identify the persons Plaintiff has communicated with regarding the conditions at issue, the claims in this lawsuit, and housing conditions at Fort Belvoir.

24

**12/23/22 SUPPLEMENTAL RESPONSE**

See supplemental documents that are being produced and see supplemental response to interrogatory number 16.

18.    Please describe any and all of Your Internet or social media activity regarding Your health conditions, Your children's health conditions, the housing complaints at issue in this lawsuit, the lawsuit itself, Your advocacy efforts, the Defendants, and/or military housing at Fort Belvoir, including but not limited to, any Twitter, Instagram, LinkedIn, Facebook, Facebook messenger, and/or TikTok posts, or participation or conversation in any online public forums.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence.  To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague

and unduly burdensome.

**RESPONSE:**

Plaintiff uses the Facebook social media platform. Plaintiff refers Defendants to the relevant, responsive, nonprivileged social media files produced herewith.

**12/23/22 SUPPLEMENTAL RESPONSE**

See supplemental documents that are being produced and see supplemental response to interrogatory number 16.

Dated: December 23, 2022.

s/John Hughes
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

Joel R. Rhine, NC State Bar No. 16028
Martin A. Ramey, NC State Bar No. 33617
Ruth A. Sheehan, NC State Bar No. 48069
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Phone: 910-772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
RAS@rhinelawfirm.com
Counsel for Plaintiffs

Mona Lisa Wallace, NC Bar No. 009201
John Hughes, NC State Bar No. 22126
WALLACE AND GRAHAM, PA.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Counsel for Plaintiffs

John A. Yanchunis, FL Bar No. 324681
Kenya Reddy, FL Bar No. 459933
MORGAN & MORGAN LAW FIRM
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: 813-223-5505
JYanchunis@ForThePeople.com
KReddy@ForThePeople.com
Counsel for Plaintiff

27

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2022, a copy of the foregoing was served via e-mail on all counsel of record, including:

Kathryn E. Bonorchis #80007
Joseph Doukmetzian, 91685
Lewis, Brisbois, Bisgaard & Smith, LLP
100 Light Street, Suite 1300
Baltimore, Maryland, 21202
Kathryn.Bonorchis@lewisbrisbois.com
<u>Joseph.Doukmetzian@lewisbrisbois.com</u>

Richard G, Morgan, Admitted *Pro Hac Vice*
Tina Syring, Admitted *Pro Hac Vice*
Emily Suhr, Admitted *Pro Hac Vice*
Lewis, Brisbois, Bisgaard & Smith, LLP
Wells Fargo Center
90 South 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Richard.Morgan@lewisbrisbois.com
Tina.Syring@lewisbrisbois.com
Emily.Suhr@lewisbrisbois.com

*Attorneys for Defendants*

Dated: December 23, 2022.

<u>s/John Hughes</u>
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| Chief Petty Officer JOHN FISCHER and | * | |
| ASHLEY FISCHER, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. 1:22-cv-00286 |
| | * | |
| FORT BELVOIR RESIDENTIAL | * | |
| COMMUNITIES LLC, et al. | * | |
| | * | |
| Defendants | * | |

**PLAINTIFF'S 12/23/22 SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST**
**SET OF INTERROGATORIES TO JORGE ROMAN**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Jorge Roman hereby serves supplemental responses to the below Interrogatories that were served on October 24, 2022 by Defendant Fort Belvoir Residential Communities LLC ("FBRC").

16.    Please describe, with greater detail than provided in the Complaint, all physical, emotional, and mental injuries that You claim are a result of the environmental conditions and/or actions of Defendants alleged in the Complaint, including a statement of which injuries you allege have healed, which have not yet healed, and which you allege are permanent.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.

1

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather,

Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times.

Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery.  Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery.  However, broad medical discovery such as in a personal injury case is not appropriate herein.  Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

The complaint, as amended, is very detailed.  See also spouse's responses to interrogatories.

**12/23/22 SUPPLEMENTAL RESPONSE:**

See supplemental documents being produced herewith.   Mr. Roman suffered from discomfort, aggravation, irritation, concern and loss of use and enjoyment of his property, which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health.  The nature of the physical, emotional, and mental injuries that the family experienced is reflected by their extensive documentation, including that produced herewith.  Mr. Roman experienced a reasonable fear and concern regarding the

safety and health dangers posed by the living conditions for his family.  Obviously, with leaving the Belvoir housing, the Romans' concerns were to some extent alleviated.

17.     Identify each and every element of damages You seek in this Action and the amount of each element of damages. For expenses incurred, including but not limited to medical costs, medication costs, counseling services, and any related liens, please list the person or institution generating the bill, the amount paid, and the reason for the bill. For future medical expenses, please state the date you expect to incur the expense, a brief description of the goods or services that you claim will be required in the future, the expected amount of the expense, and the identities of those who indicated such expenses will be necessary.

**<u>OBJECTIONS</u>**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times.

3

Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs have not yet calculated their damages.

**12/23/22 SUPPLEMENTAL RESPONSE:**

Plaintiffs will cooperate with Defendants in the event that Defendants desire to seek to obtain Plaintiffs' medical records and medical bills. Plaintiffs are producing medical records that are in their possession. Plaintiffs do not expect to be putting on expert medical testimony to the effect that exposure to the poor housing conditions caused a specific illness for a special Plaintiff. Accordingly, Plaintiffs believe medical-related discovery has limited relevance. Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year period prior to the filing of the current complaint for discoverable medical records wherein the Plaintiffs with physical or mental injuries will produce the names of their respective medical providers. Plaintiffs will sign authorizations to allow for the release of records from medical providers so long as Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating appropriately limited medical records discovery as agreed. From these records can be determined the names of medical providers. If Defendants desire to use this information and these names to seek additional medical records, Plaintiffs will cooperate.

4

Dated: December 23, 2022.

s/John Hughes
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

Joel R. Rhine, NC State Bar No. 16028
Martin A. Ramey, NC State Bar No. 33617
Ruth A. Sheehan, NC State Bar No. 48069
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Phone: 910-772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
RAS@rhinelawfirm.com
Counsel for Plaintiffs

Mona Lisa Wallace, NC Bar No. 009201
John Hughes, NC State Bar No. 22126
WALLACE AND GRAHAM, PA.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Counsel for Plaintiffs

John A. Yanchunis, FL Bar No. 324681
Kenya Reddy, FL Bar No. 459933
MORGAN & MORGAN LAW FIRM
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: 813-223-5505
JYanchunis@ForThePeople.com
KReddy@ForThePeople.com
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2022, a copy of the foregoing  was
served via e-mail on all counsel of record, including:

Kathryn E. Bonorchis #80007
Joseph Doukmetzian, 91685
Lewis, Brisbois, Bisgaard & Smith, LLP
100 Light Street, Suite 1300
Baltimore, Maryland, 21202
Kathryn.Bonorchis@lewisbrisbois.com
Joseph.Doukmetzian@lewisbrisbois.com

Richard G, Morgan, Admitted *Pro Hac Vice*
Tina Syring, Admitted *Pro Hac Vice*
Emily Suhr, Admitted *Pro Hac Vice*
Lewis, Brisbois, Bisgaard & Smith, LLP
Wells Fargo Center
90 South 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Richard.Morgan@lewisbrisbois.com
Tina.Syring@lewisbrisbois.com
Emily.Suhr@lewisbrisbois.com

*Attorneys for Defendants*

Dated: December 23, 2022.

s/John Hughes
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| Chief Petty Officer JOHN FISCHER and | * | |
| ASHLEY FISCHER, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. 1:22-cv-00286 |
| | * | |
| FORT BELVOIR RESIDENTIAL | * | |
| COMMUNITIES LLC, et al. | * | |
| | * | |
| Defendants | * | |

## PLAINTIFF'S 12/23/22 SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO CASSANDRA LANE

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ashley Fischer hereby serves her supplemental responses dated 12/23/22 to the Interrogatories that were served on October 24, 2022 by Defendant Fort Belvoir Residential Communities LLC ("FBRC").

## SUPPLEMENTAL RESPONSES

2.      Please describe in detail, with more particularity than provided in Your Complaint, the medical facts and circumstances that have lead You to believe that exposure to the real property located at **9739 Barlow Road**, caused the harm and injuries you allege.

## OBJECTIONS

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects that  the request is vague, overbroad, unduly burdensome, and seeks confidential medical information.  Plaintiff  objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.  This

1

request intrudes upon the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**<u>RESPONSE (AMENDED and SUPPLEMENTED 12/23/22):</u>**

The Plaintiffs do not merely allege that "exposure" to the "real property" caused the harm and damage they allege, but more specifically, that the family suffered a loss of the ability to use and enjoy their property (a paid-for leasehold) due to Defendants' substantial and unreasonable interference with their ability to use and enjoy that property, and that such actions caused the Lane Plaintiffs tremendous emotional suffering and distress, which includes physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has

2

endangered her/his health.    The injury recoverable under this private nuisance claim is distinguishable from personal injury damages.  Further, the Plaintiffs also allege that Defendant's poor and unlawful conduct extended beyond the physical conditions in the home to also include the bullying and misleading, unfair and deceptive tenant service practices by the property manager. Thus the "medical facts and circumstances" do not account for all relevant categories of Plaintiffs' legally cognizable harm and damages.

Further, the Plaintiffs are  not asserting a medical-causation personal-injury claim.

While the discovery request seeks "more particularity than provided in Your Complaint," in fact the Complaint, as amended, provides detailed responsive information, and accordingly, where appropriate that information is included below.

In April 2015, Plaintiffs John and Cassandra Lane and their children arrived from Alabama having reserved a home on base at Fort Belvoir. Upon their arrival, however, they learned that their home reservation had fallen through and they found themselves scrambling for another home. They were urged to consider a home in the "Dogue Creek" area. They were told the Dogue Creek neighborhood had been upgraded, with many of the units wholly renovated.  When the Lanes visited the 9739 Barlow Road property, it did appear to be quite nice and spacious.  On or about April 21, 2015, Plaintiff John Lane, a Special Agent with Army CID, executed a form lease with the Fort Belvoir Residential Communities regarding the 9739 Barlow Road property.

Unfortunately, appearances were deceiving, and the assurances from housing were hollow. The Lanes had been living in the Barlow Road home for just a few weeks when Plaintiff Cassandra Lane noticed a strong mildew smell coming from her side of the master bedroom. Sometime later, a complaint was made. The Lanes notified housing management. A work crew was sent out but

3

performed only cosmetic maintenance. The Lanes then contacted the property manager, Janet Mooneyham, Senior "Community Manager" -- Dogue Creek, who visited the property personally, with the assistant manager. They checked the wall with a moisture meter and determined that it was, in fact, wet. Mooneyham then told the Lanes the work was unacceptable; she said she was taking the situation into her own hands.  After inspecting the Southeast corner of the bedroom, Ms. Mooneyham announced that the Lanes would have to be moved to temporary housing until the "mildew" problem was resolved.   From this point on all communications pertaining to mold went directly through Ms. Mooneyham rather than through work orders due to her "dedication and personal interest."

The Lanes were moved to an available housing unit directly across Moyer Road from 9739 Barlow Road, for what was supposed to be a week. They were required to pack up their essentials out of the house they had just moved into and had to surrender their house keys and sign a document acknowledging that their locks were going to be changed and the family was not supposed to reenter until the property was deemed safe.  From their vantage point across the street, the Lanes saw a large amount of insulation and sheetrock removed from the Barlow Road home, much of it discolored with mold. It appeared that large portions of the East and South walls were being removed. Landscaping work was also performed to ensure rain water no longer flowed at the back of the house.  The Lanes asked why the mold wasn't tested and were told that that all mold on the base was treated as if it were black mold, rather than paying for the testing. Some time later, the Lanes learned that their neighbor who shared a living room wall with their bedroom had to remove pictures on their living room wall; the pictures were covered in mold.

After the Lanes moved back in to the home at Barlow Road, the mildew smell gradually returned. On September 22, 2017, the Lanes asked maintenance to come back because of the condition of the wall in the master bedroom. The sheetrock appeared to be saturated from the inside and the paint started changing shape and color. A hole was cut in the wall and one of the maintenance workers related that it felt dry inside and it was fine. The wall was "treated" with a coat of Kilz and repainted. The strong smell of mold did not go away. The Lanes at that point asked to be moved to a different home, but property management would not pay for the move because they claimed the mold had been abated.

In 2018, in advance of their upcoming base transfer, the Lanes were removing items from a hall closet near the living room and noticed that the wall was saturated and covered with a black, fuzzy substance. On March 29, 2018, the Lanes notified property management and were instructed to vacate the property again. They were leaving a day later on vacation and left for the Niagara Falls a day early. While gone, they were once again told by housing management that testing would not be performed on the mold. The Lanes filed an ICE complaint online.

Following the trip and until they were transferred, Mr and Mrs. Lane began sleeping in their children's rooms or the living room to avoid the overwhelming mildew smell in their bedroom. Later they noticed the same kind of smell in another bedroom on the South side of the house. They learned that the foundation of the Barlow Road home was cracked – they could feel it in the floor of the master bedroom – and that was where the moisture was coming in. The foundation was never addressed by housing management.

The Lanes had grown increasingly frustrated over the ongoing mold issues in their home and the failure of housing to address the problems, in large part because of the increasing health

5

concerns they and their children were experiencing.   All three of the boys had begun exhibiting neurological issues; Aidan and Avery's eczema worsened. All of them experienced an increase in sinus problems, aggravated seasonal allergies and allergic rhinitis, respiratory issues and repeated illnesses including hand foot and mouth disease impacting even John Lane. The Lane parents report that the children had never before and have not since experienced so many colds, and other viruses, as well as other respiratory illnesses. Cassandra Lane was diagnosed with an autoimmune disease. The Lanes also experienced other physical and emotional issues related to the stress of living in a home that was clearly infested with mold.

Plaintiffs are not making personal injury claims.  They are making claims *inter alia* for rental refunds due to breach of contract and breach of landlord-tenant duties, and for private nuisance damages that are recoverable by a home occupant, i.e., discomfort, annoyance, irritation, aggravation, and loss of use and enjoyment of a homestead, which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health As such, Plaintiffs do not expect to be putting on expert medical testimony to the effect that exposure to the poor housing conditions caused a specific illness for a special Plaintiff.   Accordingly, Plaintiffs believe medical-related discovery has limited relevance.  Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year period prior to the filing of the current complaint for discoverable medical records wherein the Plaintiffs with physical or mental injuries will produce the names of their respective medical providers. Plaintiffs will sign authorizations to allow for the release of records from medical providers so long as Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating appropriately limited medical records discovery as agreed. With regard to names of medical providers the Lane Plaintiffs have secured copies of pertinent medical records,

6

the providers names contained therein and will cooperate if additional providers are requested. These medical recorders are provided here pursuant to confidentiality protective order.

Plaintiffs are also producing additional emails, social media entries, and documents related to their residency at Barlow Road. These documents include information on the details of the family's complaints regarding the housing conditions and the property management services and the discomfort, irritation and annoyance the family suffered and speak for themselves.

3. Please describe in detail, with more particularity than provided in Your Complaint, the medical facts and circumstances that have lead You to believe that exposure to the real property located at **9739 Barlow Road**, caused the harm and injuries you allege.

**<u>OBJECTIONS</u>**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case. This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather,

Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs direct Defendants to their statements made in their response to interrogatory number 2 with regard to the nature of their claim and their legally recoverable harm and damages, and with regard to the responsiveness of the facts recited in their Complaint, as amended.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See amended and supplemental response to interrogatory number 2. And see supplemental documents that are being produced.

3.      State with precision the nature and symptoms of any physical, mental, and/or emotional injuries You allege any member of the Lane family suffered as a result of Defendants' alleged wrongdoing and what, if any, medical and/or healthcare treatment each family member sought or received.

**OBJECTIONS:**

Plaintiff objects to the extent that the discovery request implicates expert testimony

8

given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information. Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.  This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery.  However, broad medical discovery such as in a personal injury case is not appropriate herein.  Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

9

Plaintiffs direct the Defendants to their comments made in their response to interrogatory number 2. As to medical records, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See amended and supplemental responses to interrogatory number 2. And see supplemental documents that are being produced. The family members suffered from the discomfort, annoyance, aggravation and irritation caused by a chronically bad housing situation. This is detailed in prior discovery as well as supplemented discovery here. -P The Plaintiffs are not making a personal injury claim.. However, Plaintiffs are claiming that as a result of how Defendants misused their ownership and control over the communities under the 50-year ground lease, the Plaintiffs as home occupants were subjected to an unreasonable and substantial interference with their ability to use and enjoy their leased property, which includes physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health. The emails, complaints and social media of the Plaintiffs provide additional detail.


4.      For each member of the Lane Family, identify all pre-existing physical, mental, and/or emotional conditions, problems or difficulties affected by the same physical, mental, and/or emotional injuries identified in response to Interrogatory No. 3.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects that the request is vague, overbroad, unduly burdensome, and seeks confidential medical information.

Plaintiff objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case. This request intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

Plaintiffs direct the Defendants to their comments made in their response to interrogatory number 2. As to medical records, the Plaintiffs will cooperate so as to allow their medical records to be provided under the terms of a confidentiality protective order. Plaintiffs further refer

Defendants to their Response to Interrogatory No. 7 and incorporate that response by reference herein.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental responses to interrogatory numbers 2 and 3. And see supplemental documents that are being produced.


6.    State whether any member of the Lane family has been physically, mentally and/or emotionally injured in any way since April 2015, as a result of any accident and/or occurrence unrelated to the allegations set forth in the Complaint. If so, please describe:

a.    Who was injured;

b.    The injury;

c.    The date of injury;

d.    The nature of the injury; and

e.    How the individual incurred the injury.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request seeks information on unrelated injuries with no bearing or potential relevance to the case and seeks discovery that is not proportional to the needs of the case and is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that the request is unduly burdensome and seeks confidential medical information. Plaintiff further objects to the extent the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor

12

is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:**

With regard to whether any member of the Lane Family has been physically, mentally or emotionally injured since April 2015 a result of any matters unrelated to the allegations set forth in the Complaint, as amended, the Plaintiffs respond that obviously, the ongoing medical problems and issues in their family and particularly with their children are and were a source of ongoing stress. However, that level of stress was only heightened once the family encountered Defendants' reckless and harmful repair, maintenance and tenant service practices.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental response to interrogatory numbers 2 and 3. And see supplemental documents that are being produced.

13

7.    Please describe each and every location in **9739 Barlow Road** which You believe were subject to moisture damage, water intrusion, or mold, including a description of your findings and the date(s) upon which you observed such condition.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery request seeks information already in the possession of the Defendants and/or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The burden of providing information sought by this interrogatory is substantially the same or less for Defendant as for Plaintiff. Plaintiff further objects that the request is unduly burdensome in so far as it seeks Plaintiff to recall each and every date.

**RESPONSE:**

See response to interrogatory number 2.  And, see documents being produced.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental documents that are being produced.

14.    Please Identify all other Fort Belvoir residents (former or current) with whom You have communicated regarding the conditions at issue, Your claims in this lawsuit, housing conditions at Fort Belvoir, the Defendants, Your advocacy efforts, and/or congressional hearings.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private

14

communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence.  To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

**RESPONSE:**

Plaintiff responds and states that Plaintiffs have communicated with several Fort Belvoir residents and/or former Fort Belvoir residents. The identities of those residents are ascertainable from the communications and social media posts that are being produced herewith. Plaintiffs further respond that they communicated frequently with the former residents of the 9547 Kezia Trail residence. Screenshots of Plaintiffs' conversations with the former residents are being produced herewith, along with other communications between the Plaintiffs and other Fort Belvoir residents. Plaintiff Cassandra Lane's social media activity related to housing conditions has been produced, or will be produced if other posts regarding those conditions, or the family's related health problems, are discovered. At the time of the Lanes' residency at Ft. Belvoir, Plaintiff participated in a residents' group on Facebook.

15

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental documents that are being produced.  Plaintiff is producing social media entries that Plaintiffs were able to locate after performing a reasonable search..


16.      Please describe any and all of Your Internet or social media activity regarding Your health conditions, Your children's health conditions, the housing complaints at issue in this lawsuit, the lawsuit itself, Your advocacy efforts, the Defendants, and/or military housing at Fort Belvoir, including but not limited to, any Twitter, Instagram, LinkedIn, Facebook, Facebook messenger, and/or TikTok posts, or participation or conversation in any online public forums.

**OBJECTIONS**

Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence.  To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work- doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

16

**RESPONSE:**

Plaintiff Cassandra Lane's social media activity related to housing conditions has been produced, or will be produced if other posts regarding those conditions, or the family's related health problems, are discovered. At the time of the Lanes' residency at Ft. Belvoir, Plaintiff participated in a residents' group on Facebook.

**SUPPLEMENTAL RESPONSE DATED 12/22/22:**

See supplemental documents that are being produced.

Dated: December 23, 2022.

_/s/ Joseph M. Langone_____
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

Joel R. Rhine, NC State Bar No. 16028
Martin A. Ramey, NC State Bar No. 33617
Ruth A. Sheehan, NC State Bar No. 48069
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Phone: 910-772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
RAS@rhinelawfirm.com
Counsel for Plaintiffs

Mona Lisa Wallace, NC Bar No. 009201
John Hughes, NC State Bar No. 22126

WALLACE AND GRAHAM, PA.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Counsel for Plaintiffs

John A. Yanchunis, FL Bar No. 324681
Kenya Reddy, FL Bar No. 459933
MORGAN & MORGAN LAW FIRM
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: 813-223-5505
JYanchunis@ForThePeople.com
KReddy@ForThePeople.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of December, 2022, a copy of the foregoing

was served via e-mail on all counsel of record, including:

Kathryn E. Bonorchis #80007
Joseph Doukmetzian, 91685
Lewis, Brisbois, Bisgaard & Smith, LLP
100 Light Street, Suite 1300
Baltimore, Maryland, 21202
Kathryn.Bonorchis@lewisbrisbois.com
Joseph.Doukmetzian@lewisbrisbois.com

Richard G, Morgan, Admitted *Pro Hac Vice*
Tina Syring, Admitted *Pro Hac Vice*
Emily Suhr, Admitted *Pro Hac Vice*
Lewis, Brisbois, Bisgaard & Smith, LLP
Wells Fargo Center
90 South 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Richard.Morgan@lewisbrisbois.com
Tina.Syring@lewisbrisbois.com
Emily.Suhr@lewisbrisbois.com

*Attorneys for Defendants*

18

Dated: December 23, 2022.

> \_\_/s/ Joseph M. Langone_____
> David Hilton Wise, VA Bar No. 30828
> Joseph M. Langone, VA Bar No. 43543
> WISE LAW FIRM PLC
> 10640 Page Avenue, Suite 320
> Fairfax, Virginia 22030
> Phone: 703-934-6377
> dwise@wiselaw.pro
> jlangone@wiselaw.pro
> Counsel for Plaintiff

19

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| Chief Petty Officer JOHN FISCHER and | * | |
| ASHLEY FISCHER, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. 1:22-cv-00286 |
| | * | |
| FORT BELVOIR RESIDENTIAL | * | |
| COMMUNITIES LLC, et al. | * | |
| | * | |
| Defendants | * | |

**PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF
INTERROGATORIES TO JOHN LANE**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Civil Rule
26(C), Plaintiff John Lane ("Lane" or "Plaintiff") hereby serves supplemental responses to the
below Interrogatories that were served on October 24, 2022 by Defendant Fort Belvoir Residential
Communities LLC ("FBRC").

**INTERROGATORIES**

2.      Please describe, with more detail than alleged in the Complaint and from your own
perspective, the nature and form of the injunctive relief you seek from Defendants. Please include,
if applicable, the nature of injunctive relief sought from each Defendant, individually.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks to obligate Plaintiff
to determine the exact contours of Plaintiff's claim for injunctive relief and the parameters of the
proposed equitable remedy prematurely and prior to having conducted adequate discovery to fully

1

understand the current nature of Defendants' improper conduct and operations. Plaintiff further

objects to the extent that this is a premature contention interrogatory and/or seeks a legal

conclusion.

**RESPONSE:** Plaintiffs cannot fully articulate their request for injunctive and equitable relief remedies until they have had the benefit of discovery from Defendants. However, at this stage, they show:

- They seek reform of Defendants' landlord-tenant and property management practices.
- They seek injunctive relief ordering Defendants to comply with the Tenant Bill of Rights.
- They seek injunctive relief ordering Defendants to adequately inspect and test residential units for root causes of problems such as water intrusion and mold; to engage in adequate remediation, restoration and if necessary, abandonment and replacement or rebuilding of irremediably compromised units
- They seek declaratory relief construing the terms of the form lease and determining the parties' respective material duties and obligations for ongoing tenants and class members.

They seek disgorgement of rental monies obtained by Defendants from Plaintiffs and class

members pursuant to BAH payments.

### SUPPLEMENTAL RESPONSE DATED 12/23/22:

See supplemental documents that are being produced.

3.Please describe, with more detail than alleged in the Complaint and from your own

perspective, what facts specific to You and Your family cause you to believe that injunctive relief

from Defendants is warranted and/or necessary.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks to obligate Plaintiff

to determine the exact contours of Plaintiff's claim for injunctive relief and the parameters of the

proposed equitable remedy prematurely and prior to having conducted adequate discovery to fully

understand the current nature of Defendants' improper conduct and operations and/or requests a

legal conclusion.

**RESPONSE:**  Plaintiffs cannot fully articulate their request for injunctive and equitable relief remedies until they have had the benefit of discovery from Defendants.  However, at this stage, they show:

- Plaintiffs believe that reform of Defendants' landlord-tenant and property management practices is necessary because of their own landlord-tenant experience.  As reflected in the allegations stated in the complaint, as amended, Plaintiffs were unable to receive adequate, fair and reasonable property management or landlord-tenant services.
- They believe that the Court should enter injunctive relief ordering Defendants to comply with the Tenant Bill of Rights, because based on their own experience and anecdotal evidence from more recent tenants, the Defendants are not carrying out their basic duties as the landlord and as the property manager.
- They believe that injunctive relief ordering Defendants to adequately inspect and test residential units for root causes of problems such as water intrusion and mold is needed because that was needed as to their own units where they lived, and yet, it did not adequately occur.  Likewise, for the same reasons, the Plaintiffs believe that a Court Order is needed to require Defendants to engage in adequate remediation, restoration and if necessary, abandonment and replacement or rebuilding of irremediably compromised units
- They seek declaratory relief construing the terms of the form lease and determining the parties' respective material duties and obligations for ongoing tenants and class members, because in the context of their own leases, they did not receive the quality of housing or the tenant services for which they bargained and for which they paid.

They seek disgorgement of rental monies obtained by Defendants from Plaintiffs and class members pursuant to BAH payments, for the same reasons as are stated above.

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced.

4.Please describe, with more detail than alleged in the Complaint and from Your own

perspective, what actions and/or commissions that You seek to have the Court estop, prevent,

restrain or prohibit the Defendants from doing.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks to obligate Plaintiff

to determine the exact contours of Plaintiff's claim for injunctive relief and the parameters of the

proposed equitable remedy prematurely and prior to having conducted adequate discovery to fully understand the current nature of Defendants' improper conduct and operations and/or seeks a legal conclusion.

**RESPONSE:**  See responses to interrogatories 2 and 3 above.

### **SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced.

5.Please describe, with more detail than alleged in the Complaint and from your own perspective, how, why and upon what basis You believe that monetary (money) damages alone are insufficient as remedy to provide relief for the specific allegations and causes of action You have raised against Defendants in this lawsuit?

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks to obligate Plaintiff to determine the exact contours of Plaintiff's claim for injunctive relief and the parameters of the proposed equitable remedy prematurely and prior to having conducted adequate discovery to fully understand the current nature of Defendants' improper conduct and operations.

Plaintiff further objects to the extent that since the Plaintiff is under no obligation to determine total damages or calculate damages to be sought at trial at this time, they are not obligated to determine the exact nature of any equitable damages.  Therefore, since money damages are not available at this time there is no way to determine the exact nature or extent of what equitable claims will be necessary be.  Moreover, at this stage of class certification to what extent the equitable damages will be depends on the what monetary damage calculation are allowed to proceed after class certification, therefore such determination is premature.

4

The Plaintiff further objects as equitable damage calculations are premature at the class action stage because the information sought may include equitable damages to be allocated to each absent putative class who are not clients nor members of the class at this stage of the litigation.

**RESPONSE:**  See responses to interrogatories 2 and 3 above.  Monetary damages will not ensure that Defendants abide by their lease obligations, their statutory landlord-tenant obligations, or their Bill of Rights obligations going forward.  Monetary damages will not ensure that existing residential units are not repaired, renovated and replaced where necessary to protect servicemember families.

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced.


6.Please describe, with more detail than alleged in the Amended Complaint and from your own perspective, in what way(s) You believe that you will suffer irreparable harm if the injunctive relief sought in the Amended Complaint is not granted.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks to obligate Plaintiff to determine the exact contours of Plaintiff's claim for injunctive relief and the parameters of the proposed equitable remedy prematurely and prior to having conducted adequate discovery to fully understand the current nature of Defendants' improper conduct and operations.

Plaintiff further objects to the extent that since the Plaintiff is under no obligation to determine total damages or calculate damages to be sought at trial at this time, they are not obligated to determine the exact nature of any equitable damages.  Therefore, since money damages are not available at this time there is no way to determine the exact nature or extent of

5

what equitable claims will be necessary be.  Moreover, at this stage of class certification to what extent the equitable damages will be depends on what monetary damage calculation are allowed to proceed after class certification, therefore such determination is premature.

The Plaintiff further objects as equitable damage calculations are premature at the class action stage because the information sought may include equitable damages to be allocated to each absent putative class who are not clients nor members of the class at this stage of the litigation.

**RESPONSE:**  See responses to interrogatories 2, 3 and 5 above.

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced.


7.    Please Identify any representative, employee, or agent of Defendants with whom You communicated regarding any complaints You had concerning the Premises from April 2016 to the present, and state the methods by which You communicated Your complaints.

**OBJECTIONS:**  Plaintiff objects to the extent that the discovery request seeks information already in the possession of the Defendants.  Plaintiff objects that this request is vague, overbroad, and unduly burdensome. This request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence

**RESPONSE:**    Without waiving these or any other objections, Plaintiff states that he communicated with Janet Mooneyham, the senior community manager, or her assistant Eddra Romero, as well as members of maintenance staff, including a man named George.

6

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced, including emails with staff, and photographs of conditions.

9.      Please describe each and every location in the **9739 Barlow Road** which You believe were subject to moisture damage, water intrusion, or mold, including a description of your findings and the date(s) upon which you observed such condition.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks information already in the possession of the Defendants and/or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The burden of providing information sought by this interrogatory is substantially the same or less for Defendant as for Plaintiff. Plaintiff further objects that the request is unduly burdensome in so far as it seeks Plaintiff to recall each and every date.

Plaintiff further objects to the extent the discovery request would purport to require premature disclosure of expert opinion.

**RESPONSE:**  Without waiving these or any other objections, Plaintiff states that his wife Cassandra Lane first noticed a strong smell of mildew or mold in the master bedroom of the Barlow Road home, on her side of the bed, in the Southeast corner of the room within months of moving into the home.

In September 2017, Plaintiff and his wife reported that the sheetrock in the same bedroom was saturated from the inside out and the mildew smell had returned and grown stronger.

In March of 2018, the Lanes discovered that the interior of a large hall closet near the living room was saturated and was covered in a black furry substance.

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced including photographs illustrating the mold and other issues.

10.    Please describe any work orders or service requests You submitted during Your residence at **9739 Barlow Road**, including the dates or any work order or request, the nature of the work order or maintenance requested, and any responses or actions taken to address the request.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery request seeks information already in the possession of the Defendants and/or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The burden of providing information sought by this interrogatory is substantially the same or less for Defendant as for Plaintiff. Plaintiff further objects that the request is unduly burdensome and vague in so far as it seeks Plaintiff to recall Defendants' response.

Plaintiff further objects to the extent the discovery request would purport to require premature disclosure of expert opinion.

**RESPONSE:**  Without waiving these or any other objections, Plaintiff states that in addition to their complaints and work orders for the recurring mold, they submitted work orders for replacement of a garbage disposal and another kitchen appliance.

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced including communications related to a tree that needed to be removed from the Barlow Road property.

11.Please Identify all other Fort Belvoir residents (former or current) with whom You have communicated regarding the conditions at issue, Your claims in this lawsuit, housing conditions at Fort Belvoir, the Defendants, Your advocacy efforts, and/or congressional hearings.

**OBJECTIONS:** Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications that are protected under the Military Housing Privatization Initiative Tenant Bill of Rights paragraph seven (7) which has been adopted by Defendants. Plaintiff objects to the extent that the discovery requests seeks to intrude upon confidential and private communications were shared on a private Facebook group with an expectation of privacy by individuals who feared, and still fear, retaliation at the hands of the Defendants and via their influence over the military and undo command influence.  To the extent that the discovery request seeks public social media information, Plaintiff objects to the extent that the information sought is as readily available to the Defendants as it is to the Plaintiff and or is in the public domain. This request also intrudes the attorney-client privilege and attorney work-doctrine protections by requiring the disclosure of privileged communications and information relating to attorney strategy, impressions, and client goals. Plaintiff also objects that this request is overly broad, vague and unduly burdensome.

**RESPONSE:**  See documents produced, including public Facebook posts.

**SUPPLEMENTAL RESPONSE DATED 12/23/22:**

See supplemental documents that are being produced, including email with another service member. .

15.Please describe, with greater detail than provided in the Complaint, all physical, emotional, and mental injuries that You claim are a result of the environmental conditions and/or actions of Defendants alleged in the Complaint, including a statement of which injuries you allege have healed, which have not yet healed, and which you allege are permanent.

**OBJECTIONS** Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived.  Plaintiff further objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages.  Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery.  However, broad medical discovery such as in a

personal injury case is not appropriate herein.  Further, any medical records that are produced

may require appropriate protection under a confidentiality protective order.

**RESPONSE:**    The complaint, as amended, is very detailed.  See also spouse's response to
Interrogatory 2.
                    **SUPPLEMENTAL RESPONSE DATED 12/22/22:**

Plaintiffs are not making personal injury claims.  They are making claims *inter alia* for rental

refunds due to breach of contract and breach of landlord-tenant duties, and for private nuisance

damages that are recoverable by a home occupant, i.e., discomfort, annoyance, irritation,

aggravation, and loss of use and enjoyment of a homestead, which include physical and emotional

injury and/or mental anguish which resulted from the nuisance because this nuisance has

endangered her/his health.   As such, Plaintiffs do not expect to be putting on expert medical

testimony to the effect that exposure to the poor housing conditions caused a specific illness for a

special Plaintiff.  Accordingly, Plaintiffs believe medical-related discovery has limited relevance.

Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year

period prior to the filing of the current complaint for discoverable medical records wherein the

Plaintiffs with physical or mental injuries will produce the names of their respective medical

providers. The Lane Plaintiffs have gathered pertinent medical records here. They are also willing

to sign authorizations to allow for the release of records from medical providers so long as

Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating

appropriately limited medical records discovery as agreed.  From these records can be determined

the names of medical providers.  If Defendants desire to use this information and these names to

seek additional medical records, Plaintiffs will cooperate.

16.Identify each and every element of damages You seek in this Action and the amount of each element of damages. For expenses incurred, including but not limited to medical costs, medication costs, counseling services, and any related liens, please list the person or institution generating the bill, the amount paid, and the reason for the bill. For future medical expenses, please state the date you expect to incur the expense, a brief description of the goods or services that you claim will be required in the future, the expected amount of the expense, and the identities of those who indicated such expenses will be necessary.

**OBJECTIONS** Plaintiff objects to the extent that the discovery request implicates expert testimony given as the deadline for disclosing experts has not yet arrived. Plaintiff further objects to the extent the discovery request implies or suggests that only by putting on medical expert testimony can legally cognizable injuries or damages be proven in this case.

Plaintiff further objects to the extent that medical evidence or proof is not necessary for one or more of Plaintiff's claims herein and therefore medical records evidence is not relevant nor is its discovery proportional to the needs of the case.

Plaintiff further objects that she/he is not claiming personal injury damages. Rather, Plaintiff is seeking, inter alia, allowable damages for private nuisance, including for her/his discomfort, annoyance and loss of use and enjoyment of their home during the pertinent times which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health. Accordingly, Plaintiff should not be obligated to cooperate with intrusive medical discovery. Accordingly, Plaintiff objects on the grounds that the request is overly broad, unduly burdensome, harassing and intrusive into personal matters.

Plaintiff is willing to produce medical documents as agreed in the meet and confer with Defendants for purposes of facilitating appropriately limited medical records discovery. However, broad medical discovery such as in a personal injury case is not appropriate herein. Further, any medical records that are produced may require appropriate protection under a confidentiality protective order.

**RESPONSE:** Plaintiffs have not yet calculated their damages.

### SUPPLEMENTAL RESPONSE DATED 12/22/22:

Plaintiffs are not making personal injury claims. They are making claims *inter alia* for rental refunds due to breach of contract and breach of landlord-tenant duties, and for private nuisance damages that are recoverable by a home occupant, i.e., discomfort, annoyance, irritation, aggravation, and loss of use and enjoyment of a homestead, which include physical and emotional injury and/or mental anguish which resulted from the nuisance because this nuisance has endangered her/his health. As such, Plaintiffs do not expect to be putting on expert medical testimony to the effect that exposure to the poor housing conditions caused a specific illness for a special Plaintiff. Accordingly, Plaintiffs believe medical-related discovery has limited relevance. Accordingly, during the meet and confer with Defendants, the parties agreed to a five (5) year period prior to the filing of the current complaint for discoverable medical records wherein the Plaintiffs with physical or mental injuries will produce the names of their respective medical providers. The Lane Plaintiffs have gathered pertinent medical records here. They are also willing to sign authorizations to allow for the release of records from medical providers so long as Defendants will provide Plaintiffs with copies of records they receive for purposes of facilitating appropriately limited medical records discovery as agreed.

13

Dated: December 23, 2022.

/s/ David Hilton Wise
David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Phone: 703-934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro
Counsel for Plaintiffs

Joel R. Rhine, NC State Bar No. 16028
Martin A. Ramey, NC State Bar No. 33617
Ruth A. Sheehan, NC State Bar No. 48069
RHINE LAW FIRM, P.C.
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Phone: 910-772-9960
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
RAS@rhinelawfirm.com
Counsel for Plaintiffs

Mona Lisa Wallace, NC Bar No. 009201
John Hughes, NC State Bar No. 22126
WALLACE AND GRAHAM, PA.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
Counsel for Plaintiffs

John A. Yanchunis, FL Bar No. 324681
Kenya Reddy, FL Bar No. 459933
MORGAN & MORGAN LAW FIRM
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: 813-223-5505
Jyanchunis@ForThePeople.com
Kreddy@ForThePeople.com
Counsel for Plaintiff

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2022, a copy of the foregoing was served via e-mail on all counsel of record, including:

Kathryn E. Bonorchis #80007
Joseph Doukmetzian, 91685
Lewis, Brisbois, Bisgaard & Smith, LLP
100 Light Street, Suite 1300
Baltimore, Maryland, 21202
Kathryn.Bonorchis@lewisbrisbois.com
Joseph.Doukmetzian@lewisbrisbois.com

Richard G, Morgan, Admitted *Pro Hac Vice*
Tina Syring, Admitted *Pro Hac Vice*
Emily Suhr, Admitted *Pro Hac Vice*
Lewis, Brisbois, Bisgaard & Smith, LLP
Wells Fargo Center
90 South 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Richard.Morgan@lewisbrisbois.com
Tina.Syring@lewisbrisbois.com
Emily.Suhr@lewisbrisbois.com
*Attorneys for Defendants*


/s/ David Hilton Wise

15