IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Chief Petty Officer JOHN FISCHER and ASHLEY FISCHER, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FORT BELVOIR RESIDENTIAL COMMUNITIES LLC, *et al.*, | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 1:22-cv-286 (RDA/LRV)

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim or, in the Alternative, to strike Portions of the Third Amended Complaint ("Motion to Dismiss or, in the Alternative, to Strike"). Dkt. 62. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion to Dismiss or, in the Alternative, to Strike, together with Defendants' Memorandum in Support (Dkt. 62-1), Plaintiffs' Opposition (Dkt. 79), and Defendants' Reply (Dkt. 81), the Court DENIES the Motion to Dismiss and GRANTS the alternative Motion to Strike.

## I. BACKGROUND

### A. Factual Background[1]

At the center of this putative class action is a landlord-tenant dispute concerning the allegedly poor condition of Plaintiffs' military family housing at Fort Belvoir, a U.S. Army base.

---

[1] For purposes of considering this Motion, the Court accepts all facts contained within Plaintiffs' Third Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Dkt. 56 ¶¶ 29, 31.  Plaintiffs are military servicemembers and their spouses who reside or resided at Fort Belvoir.  *Id.* ¶¶ 41-75.  Defendant Fort Belvoir Residential Communities LLC ("FBRC") is the landlord for the privatized military housing at issue here.  *Id.* ¶¶ 31, 76.  Defendant Michaels Management Services, Inc. ("MMS") is a former property manager for Fort Belvoir, and Defendant MMS Army, LLC ("MMS Army") is the current property manager.  *Id.* ¶¶ 83, 85.

Plaintiffs claim that they endured reprehensibly poor housing conditions while they or their spouses were serving this country.  *Id.* ¶ 29.  Specifically, they assert that they were placed in homes with water intrusion, mold growth, and pest infestations, among other conditions, that rendered their homes unlivable, to the point where Plaintiffs and their families were physically "displaced" and relocated to temporary housing so that Defendants could purportedly address some of those problems.  *Id.* ¶¶ 35, 221, 289, 320, 335, 349-50, 401, 412, 419, 443-44, 460, 472, 523, 564, 591.  Plaintiffs further allege that Defendants failed to properly remediate and ensure that the problems would not recur.  *Id.* ¶¶ 30, 288, 538.  Essentially, Plaintiffs allege a pattern involving families of tenants complaining about problems with their housing, Defendants sending maintenance workers who would use the cheapest and quickest fixes without performing any root cause assessments, Defendants informing the families that their homes are safe, and the families returning only to find that the problems had not been resolved.  *Id.* ¶ 204; *see generally id.* ¶¶ 91-646.

In the Third Amended Complaint ("TAC"), Plaintiffs also recount the following facts pertaining to government oversight of privatized military housing, and specifically, the Fort Belvoir property.  Plaintiffs explain that, in 1996, Congress enacted the Military Housing Privatization Initiative ("MHPI") in response to the Department of Defense's ("DOD") concerns about the effect of poor-quality housing on servicemembers and their families.  *Id.* ¶ 646.  Pursuant

to the MHPI, responsibility was transferred to private-sector developers for construction, renovation, maintenance, and repair of military housing in the United States. *Id.* Due to increasing reports from servicemembers and their families about poor military housing conditions, Congress directed the Government Accountability Office ("GAO") to review the MHPI's implementation of initiatives to improve privatized housing. *Id.* ¶ 694 (citing Statement of Elizabeth A. Field, Director, Defense Capabilities and Management, GAO, Preliminary Observations on DOD's Oversight of the Condition of Privatized Military Housing, Dec. 3, 2019, No. GAO-20-280T). In March of 2020, Elizabeth Field, the GAO's Defense Capabilities and Management Director, asserted that when her group investigated tenant complaints as to military housing, "we really found problems related to privatized housing at every location that we visited." *Id.* ¶ 695.

On March 10, 2021, the House Armed Services Committee on military personnel conducted a hearing as part of an investigation into military housing conditions. *Id.* ¶ 696. Clark Realty Capital, LLC ("Clark Realty"), which was the Fort Belvoir property manager prior to November 14, 2021, when MMS took over, *id.* ¶ 83, declined to participate in the hearing, drawing the ire of top committee members, *id.* ¶ 696. At the hearing, Representative Jackie Speier, the Chairwoman of the Committee, shared that "[w]e have heard and seen firsthand horror stories in these houses, from mold, to water leaks to incorrect lead abatement that has directly affected the health and safety of these families." *Id.* ¶ 696 (citing Corey Dickstein, *Lawmakers Say They Still Hear Reports of 'Horror Stories' in On-Post Housing, Blast Company for Declining to Testify*, STARS AND STRIPES (March 10, 2021), https://www.stripes.com/theaters/us/lawmakers-say-they-still-hear-reports-of-horror-stories-in-on-post-housing-blast-company-for-declining-to-testify-1.665315 [https://perma.cc/7KJA-TPPX])**.** Representative Speier further stated, "I want to call out the irresponsible conduct of Clark Realty. I want to convey to them that you can run, but you

can't hide." *Id.* (citing Karen Jowers, *Lawmaker: Base Commanders Should Be Held Responsible for Enforcing Tenants' Rights*, MILITARY TIMES (March 10, 2021), https://www.militarytimes.com/pay-benefits/2021/03/11/base-commanders-should-be-held-responsible-for-enforcing-tenants-rights-lawmaker-says/ [https://perma.cc/E4RQ-XHE3] [hereinafter *Lawmakers: Base Commanders Should Be Held Responsible*]).  She also noted that in the closed session with military family advocates, lawmakers heard serious complaints about some of the Clark properties, including continued resident dissatisfaction at Fort Belvoir "due to shoddy maintenance and improper remediation of environmental hazards." *Id.* (citing *Lawmakers: Base Commanders Should Be Held Responsible*).

### B. Procedural Background

On March 16, 2022, Plaintiffs John and Ashley Fisher and Jorge and Raven Roman filed the initial Complaint in this matter.  Dkt. 1.  Plaintiffs filed a notice of voluntary dismissal as to nine out of the original eleven defendants on June 7, 2022.  Dkt. 7.  This Court then issued an Order dismissing the nine defendants on June 9, 2022.  Dkt. 9.  Later that same day, Plaintiffs filed a First Amended Complaint naming FBRC, MMS, and MMS Army as Defendants.  Dkt. 8.  On July 11, 2022, Defendants filed a Motion to Dismiss or, in the Alternative, to Strike.  Dkt. 10.  In response, on August 8, 2022, Plaintiffs filed a Second Amended Complaint, which added the Lane family as Plaintiffs.  Dkt. 14.

Then, on November 16, 2022, Plaintiffs filed a Motion for Leave to File Amended Complaint.  Dkt. 45.  The proposed TAC added MMS Army LLC back into the case as a Defendant and added fourteen families as named Plaintiffs.  *Id*.  On December 9, 2022, Magistrate Judge Anderson granted Plaintiffs' Motion for Leave to Amend, Dkt. 53, and Plaintiffs filed their TAC that same day, Dkt. 56.  Thereafter, on December 22, 2022, Defendants filed the instant Motion,

Dkt. 62, along with a Memorandum in Support, Dkt. 62-1.  On January 12, 2023, Plaintiffs filed

an Opposition, Dkt. 79, and on January 19, 2023, Defendants filed a Reply, Dkt. 81.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6) Standard

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure

12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

U.S. at 556).  In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual

allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's

favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)

(citations omitted).  To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions

drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable

conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26

(4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Typically,

the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6)

motion. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In addition to this general pleading standard, "fraud-based claims must satisfy [Federal

Rule of Civil Procedure] 9(b)'s heightened pleading standard." *United States ex rel. Grant v.*

*United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *United States ex rel. Nathan v.*

*Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013)).  "Rule 9(b) requires that 'a

party must state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting

Fed. R. Civ. P. 9(b)).  Furthermore, "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

## B. Rule 12(f) Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of a 12(f) motion to strike "is to avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Gregory v. Belfor USA Grp., Inc.*, No. 2:12-cv-11, 2012 WL 2309054, at *1 (E.D. Va. June 15, 2012) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).  Rule 12(f) motions are generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)).  Nevertheless, a district court has considerable discretion in determining whether to strike matters from the pleadings, "especially if the allegations in the complaint will cause prejudice at a later date in the litigation."  Finally, "the court must view the pleading under attack in a light most favorable to the pleader." *Malibu Media, LLC v. Popp*, No. 114-cv-00700, 2015 WL 10937405, at *2 (E.D. Va. Apr. 13, 2015) (quoting *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D.W. Va. 1993).

## III. ANALYSIS

The TAC in the instant case asserts six causes of action on behalf of thirty-two named Plaintiffs, who assert the claims on their own behalf and on behalf of a class of others who are similarly situated.  Dkt. 56.  Defendants' Motion seeks dismissal of only one of the six counts:

6

Count I for violation of the Virginia Consumer Protection Act, Va. Code § 59.1–196 *et seq.* (the "VCPA"). Dkt. 62 at 1-2. In their Motion, Defendants move to dismiss Plaintiffs' VCPA claim on the grounds that (1) Plaintiffs do not plead the circumstances surrounding the alleged misrepresentations with the requisite particularity under Rule 9(b) and fail to allege that Defendants knowingly made the purported misrepresentations, and (2) the VCPA claim lacks the necessary common questions of law and claims and defenses typical to the class because at least 15 of the Plaintiffs may be time-barred by the statute of limitations. Dkt. 62-1 at 5-17. Alternatively, Defendants move to strike paragraph 696 from the TAC on the ground that the paragraph is an "immaterial, impertinent, and scandalous allegation." *Id.* at 5. This Court addresses each argument in turn.

### A. Whether Plaintiffs Adequately Plead Their VCPA Claim

In the instant case, Plaintiffs assert that Defendants are liable under the VCPA for engaging in a systematic practice of misrepresenting that repairs had been performed at Plaintiffs' military housing units when they in fact had not been. Dkt. 56 ¶ 758. To plausibly state a claim under the VCPA,[2] Plaintiffs "must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F.Supp.2d 731, 741 (E.D. Va. 2010).[3] To start with,

---

[2] While the VCPA generally excludes landlord-tenant disputes, "it does apply when 'the act or practice of a landlord constitutes a misrepresentation or fraudulent act or practice[,]'" as Plaintiffs allege was the case here. *Finney v. Clark Realty Cap., LLC*, No. 1:20-CV-93, 2020 WL 6948181, at *12 (E.D. Va. Aug. 6, 2020) (quoting Va. Code § 59.1-199(E)).

[3] The VCPA also requires a plaintiff to establish the elements of reliance and damages. *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014). Here, these elements are readily satisfied. First, Plaintiffs sufficiently allege reliance. Plaintiffs assert that, had they known about Defendants' property management practices, they would not have entered into leases with Defendants, Dkt. 56 ¶ 766, and that many of the class members relied upon Defendants' representations that problems with mold had been remediated in returning to their homes, only to find that those problems had not been properly addressed, *see, e.g., id.* ¶ 523. Second, Plaintiffs

Defendants do not contest that they are suppliers within the meaning of the VCPA or that the purported misrepresentations occurred in the course of consumer transactions, nor could they reasonably do so.  The VCPA defines a supplier as "a seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions."  Va. Code. §59.1-198.  "Consumer transaction" is also a statutorily defined term under the VCPA that involves "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes."  Services, in turn, include "work performed for the supplier by an agent whose charges or costs for such work are transferred by the supplier to the consumer or purchaser as an element of the consumer transaction."  *Id.*  Here, Plaintiffs adequately allege that Defendants advertised and provided mold remediation services (through their maintenance workers) for household purposes.  *See* Dkt. 56 ¶¶ 741c (alleging that Defendants deceptively marketed lease offerings as coming with excellent repair and maintenance services, when in fact that was not the case), 745-46, 748 (alleging that Defendants misrepresented the required scope of maintenance work and falsely represented that housing problems had been remediated).

The Court's analysis will therefore focus on the fraud element of a VCPA claim.  Rule 9(b) requires claims sounding in fraud to be plead with particularity.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  Rule 9(b) "has four purposes: to ensure that the defendant has sufficient information

---

provide sufficient detail about the expenses they incurred in reliance on Defendants' misrepresentations. *See, e.g., id.* ¶¶ 771, 797 (alleging that, due to Defendants' misrepresentations, Plaintiffs were forced to incur out-of-pocket costs to repair their housing units); *see also Humphrey v. Leewood Healthcare Ctr.*, 2007 WL 6013573, at * 3 (Va. Cir. Ct. May 31, 2007) (suggesting that out-of-pocket losses can constitute damages for purposes of a VCPA claim).

to mount a defense; to protect defendants from frivolous suits; to eliminate fraud actions in which all the facts are learned post-discovery; and to protect defendants from harm to goodwill or reputation." *Douros v. State Farm Fire & Cas. Co.*, 508 F. Supp. 2d 479, 485 (E.D. Va. 2007) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (1999)).  To satisfy Rule 9(b), a plaintiff must identify "'the who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted."  *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).  Still, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Here, Defendants argue that Plaintiffs' allegations do not pass Rule 9(b) muster because Plaintiffs fail to specifically identify any agents of Defendants who purportedly made the misrepresentations. Dkt. 62-1 at 7.  Plaintiffs counter that their allegations are sufficient to ensure that Defendants have enough information to formulate a defense, thus satisfying Rule 9(b), even if Plaintiffs have not alleged the specific representative who made a false statement.  Dkt. 79 at 20-21.

The Court finds that, contrary to Defendants' assertions, Rule 9(b)'s particularity requirement is satisfied here.  Importantly, the alleged misrepresentations relate to facts (rather than opinions), such as the extent of moisture, mold, or pest infestation problems, and whether those problems had been properly remediated.  *See Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 554 (E.D. Va. 2001) ("a false representation must be of an existing fact, not a

mere expression of an opinion.").  Furthermore, throughout the TAC, Plaintiffs allege specific timeframes during which Defendants' maintenance workers made misrepresentations to them. *See, e.g.*, Dkt. 56 ¶¶ 500 (alleging that Defendants misrepresented that the Braggs' house was habitable throughout September and October of 2022), 523 (alleging that, on January 11, 2022, Defendants misrepresented to the Hayward family that their home had been repaired).  The Court thus concludes that the alleged misrepresentations are sufficiently detailed to facilitate discovery and the preparation of a defense.  And in any event, there is substantial pre-discovery evidence (in the form of photos of the poor housing conditions included in the TAC) that the incidents alleged did in fact occur.  *See generally* Dkt. 56.  Accordingly, dismissal of Plaintiffs' VCPA claim would not serve the purposes of Rule 9(b).  That Plaintiffs did not name the specific maintenance workers who made misrepresentations to them does not undermine such a finding.  After all, "it is [the defendant entities] and not Plaintiffs who are in the best—indeed, the only—position to identify the maintenance workers who made the statements." *Finney v. Clark Realty Cap., LLC*, No. 1:20-CV-93, 2020 WL 6948181, at *9 (E.D. Va. Aug. 6, 2020).

Additionally, Defendants misconstrue the relevant law in arguing that the VCPA claim fails because Plaintiffs do not allege facts indicating that the maintenance workers knew the statements they made were false.  Dkt. 62-1 at 10.  While a claim for actual fraud in Virginia requires a showing of a false representation made knowingly, *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994), a VCPA claim contains no such requirement.  Indeed, an analogous case brought against Clark Realty, a previous Fort Belvoir property manager, is illustrative of these differing standards.  In *Finney*, a court in this District determined that the plaintiffs failed to plead an actual fraud claim under Virginia law because they did not "allege that the defendant entities or their agents who made the complained of misrepresentations knew they

10

were false at the time they were made." 2020 WL 6948181, at *9.  Yet, the *Finney* Court concluded

that the plaintiffs' VCPA claim could proceed beyond the motion to dismiss stage based on the

alleged negligent misrepresentation of facts.   *Id.* at *10; *see also Owens v. DRS Auto.*

*Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014) ("The VCPA clearly does not require the

consumer to prove in every case that misrepresentations were made knowingly or with the intent

to deceive.").  Here too, Plaintiffs' lack of allegations indicating scienter is not fatal to their VCPA

claim.   Any other determination would render the VCPA, which was intended "to relax the

restrictions imposed upon [consumers] by the common law[,]" merely redundant of actual fraud

under Virginia law. *Owens*, 764 S.E.2d at 260.  Accordingly, this Court finds that Plaintiffs have

sufficiently pleaded a VCPA claim.

B. Whether the VCPA Claim Lacks the Requisite Common Questions of Law and Claims and
   Defenses Typical to the Class Because Some Plaintiffs' Claims May Be Time-Barred

        Defendants also argue that because fifteen out of the thirty-two Plaintiffs may be time-

barred from bringing a VCPA claim, the claim lacks the requisite common question of law and

claims and defenses typical to the class and should thus be dismissed.  Dkt. 62-1 at 11-17.

Defendants explain that a claim under the VCPA based on misrepresentation, deception, or fraud

is deemed to accrue when the wrongdoing "is discovered or by the exercise of due diligence

reasonably should have been discovered." *Id.* at 11 (quoting Va. Code Ann. § 8.01-249(1)).  As

the original complaint in this action was filed on March 16, 2022, Defendants assert that any viable

VCPA claims would have had to accrue on or after March 16, 2020. *Id.* at 12.  However, according

to Defendants, the TAC alleges that fifteen of the thirty-two named Plaintiffs experienced housing

issues prior to that date, with no allegations of wrongdoing past that point. *Id.* at 13-17.

Defendants thus contend that determining whether the statute of limitations is met would require

each of those fifteen class members to present evidence as to when they discovered or reasonably should have discovered the alleged wrongdoing. *Id.* at 13. As a result, Defendants aver that the VCPA claim presents neither a common question of law nor claims and defenses typical to the class as required by Federal Rules of Civil Procedure 23(a)(2)-(3). *Id.*

While the issue Defendants raise is well-taken, case law from within the Fourth Circuit makes clear that "analysis of a prospective class's compliance with Rule 23 is not appropriately considered on a motion to dismiss, but should instead be addressed [o]n a motion brought pursuant to Rule 23(c)(1)(A)."[4] *Lesser v. Baltimore City Bd. of Sch. Commissioners*, No. CV JKB-17-046, 2017 WL 2733938, at *2 (D. Md. June 26, 2017) (citing *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 433 (D. Md. 2005)). Accordingly, the Court declines to dismiss the VCPA claim on this ground but will allow Defendants to renew their statute of limitations argument in opposition to Plaintiffs' pending Motion to Certify Class (Dkt. 126).

### C. Defendants' Motion to Strike Paragraph 696

Finally, in the alternative to dismissal of the VCPA count, Defendants ask the Court to Strike paragraph 696 from the TAC. Dkt. 62-1 at 17-18. Defendants argue that paragraph 696 should be stricken because it includes accusations against a non-party—namely, Clark Realty—and merely serves to prejudice Defendants by suggesting that they are somehow responsible for events involving entirely different circumstances. *Id.* at 18. Plaintiffs, on the other hand, maintain that "allegations regarding the manner in which Clark Realty acted at F[or]t. Belvoir, as an agent and property manager of FBRC, are relevant to FBRC's knowledge of the fraudulent practices being performed at Fort Belvoir by . . . its property managers." Dkt. 79 at 29. Here, even viewing

---

[4] Rule 23(c)(1)(A) provides that, "at an early practicable time . . . , the court must determine by order whether to certify the action as a class action."

the allegations in paragraph 696 in the light most favorable to Plaintiffs, the Court finds that striking these allegations is appropriate. Plaintiffs essentially conflate the conduct of Clark Realty, a non-party, with that of its successor property managers, MMS and MMS Army. That is precisely the type of prejudicial and immaterial allegation that Rule 12(f) is intended to strike. *See* Fed. R. Civ. P. 12(f) (providing that a "court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter"). As such, this Court will grant Defendants' alternative request to strike paragraph 696 from the TAC.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss is DENIED and their alternative Motion to Strike is GRANTED; and it is

FURTHER ORDERED that Defendants may file a supplement brief, not to exceed ten (10) pages, in opposition to Plaintiffs' Motion to Certify Class (Dkt. 126) within thirty (30) days of this Memorandum Opinion and Order. Such a supplemental brief must only address the statute of limitations issue with respect to the VCPA claim raised in Defendants' Motion to Dismiss or, in the Alternative, to Strike (Dkt. 62); and it is

FURTHER ORDERED that Plaintiffs may file a supplement brief, not to exceed ten (10) pages, in response to Defendants' brief. Plaintiffs' supplemental brief must be filed within fourteen (14) days of Defendants' brief.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
August 21, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge