IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Chief Petty Officer JOHN FISCHER and ASHLEY FISCHER, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:22-cv-286 (RDA/LRV) ) ) |
| FORT BELVOIR RESIDENTIAL COMMUNITIES LLC, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (the "Motion") (Dkt. 161). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with Defendants' Memorandum in Support (Dkt. 162), Plaintiffs' Opposition (Dkt. 188), and Defendants' Reply (Dkt. 192), the Court GRANTS Defendants' Motion for Partial Summary Judgment (Dkt. 161) for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

Fort Belvoir is a military installation of the U.S. Army located in Fairfax County, Virginia. Dkt. Nos. 162 ¶¶ 1-2; 188 at 3. In 1902, the General Assembly of the Commonwealth of Virginia, through a General Act of Cession, ceded exclusive Federal jurisdiction to the United States over certain lands acquired by the United States. Dkt. Nos. 162 ¶ 3; 188 at 3. Subsequently, in 1911, the United States acquired the parcel of land now known as Fort Belvoir through condemnation proceedings in the U.S. District Court for the Eastern District of Virginia. Dkt. Nos. 162 ¶ 4; 188 at 3.

The named Plaintiffs and putative class members (collectively, "Plaintiffs") in the instant case are military servicemembers and their spouses who reside or resided at Fort Belvoir. Dkt. 56 ¶¶ 41-75. Defendant Fort Belvoir Residential Communities LLC ("FBRC") is the landlord for the privatized military housing at issue here. *Id.* ¶¶ 31, 76. Defendant Michaels Management Services, Inc. ("MMS") is a former property manager for Fort Belvoir, and Defendant MMS Army, LLC ("MMS Army") is the current property manager. *Id.* ¶¶ 83, 85.

Plaintiffs claim that they endured reprehensible housing conditions at Fort Belvoir while they or their spouses were serving this country. *Id.* ¶ 29. Specifically, Plaintiffs assert that they were placed in homes with water intrusion, mold growth, and pest infestations, among other conditions, that rendered their homes unlivable, to the point where Plaintiffs and their families

---

[1] In resolving the instant Motion for Partial Summary Judgment, the Court only considers the facts (all of which are undisputed) surrounding Fort Belvoir's cession to the federal government and the language contained in Plaintiffs' leases. The Court does also recount Plaintiffs' disputed allegations regarding the poor condition of their military housing, but it does so solely for the purpose of providing background—the Court does not rely on those facts in ruling on the instant Motion.

were physically "displaced" and relocated to temporary housing so that Defendants could purportedly address some of those problems. *Id.* ¶¶ 35, 221, 289, 320, 335, 349-50, 401, 412, 419, 443-44, 460, 472, 523, 564, 591.  Plaintiffs further allege that Defendants failed to properly remediate and ensure that the problems would not recur. *Id.* ¶¶ 30, 288, 538.  Essentially, Plaintiffs allege a pattern of behavior involving tenants complaining about problems with their housing, Defendants sending maintenance workers who would use the cheapest and quickest fixes without performing any root cause assessments, Defendants informing the families that their homes are safe, and the families returning only to find that the problems had not been resolved. *Id.* ¶ 204; *see generally id.* ¶¶ 91-646.

Plaintiffs also allege that the class members all entered into similar lease agreements with Defendants that imposed explicit and implicit duties on Defendants to perform those contracts to ensure that the homes they rented were fit for human habitation, and that Defendants breached those duties. *Id.* ¶¶ 663-89.  Plaintiffs additionally allege that they were forced to continue paying full rent while displaced from their homes due to maintenance-related defects including mold. *Id.* ¶ 36.

There are two basic versions of the leases that Plaintiffs entered into: the Resident Occupancy Agreement (in effect from 2017-2021) and the Universal Lease Agreement (adopted in late 2021), both of which incorporate the laws of the Commonwealth of Virginia.  Dkt. 188 at 4.  Specifically, The Resident Occupancy Agreement, which covers a majority of the putative class members, provides, in pertinent part, that "[t]he Tenant/Landlord relationship created by this Agreement is in accordance with the laws of the Commonwealth of Virginia.  This Agreement shall be construed under the laws of the Commonwealth of Virginia." *Id.* (quoting Dkt. 188-2). And the Universal Lease Agreement includes a similar provision incorporating Virginia law:

"[t]his Lease shall be governed by the prevailing laws of the State in which the Premises is located . . . ." *Id.* at 5 (quoting Dkt. 188-6). Both Agreements also incorporate the Resident Responsibility Guide, which in turn provides that "it is intended to comply with all applicable provisions of the Commonwealth of Virginia's Landlord Tenant laws." *Id.* (quoting Dkt. 188-7).

Plaintiffs now bring the following claims against Defendants in connection with their housing at Fort Belvoir: (1) violation of the Virginia Consumer Protection Act ("VCPA"), Virginia Code §§ 59.1-196 *et seq.*; (2) violation of the Virginia Residential Landlord and Tenant Act ("VRLTA"), Virginia Code §§ 55.1-1200 *et seq.*; (3) breach of contract; and (4) temporary recurrent private nuisance. Dkt. 56 ¶¶ 727-815.

B. Procedural Background

On March 16, 2022, Plaintiffs John and Ashley Fisher and Jorge and Raven Roman filed the initial Complaint in this matter. Dkt. 1. Plaintiffs subsequently filed a notice of voluntary dismissal as to nine out of the original eleven defendants on June 7, 2022. Dkt. 7. This Court then issued an Order dismissing those nine defendants on June 9, 2022. Dkt. 9. Later that same day, Plaintiffs filed a First Amended Complaint naming FBRC, MMS, and MMS Army as Defendants. Dkt. 8. On July 11, 2022, Defendants filed a Motion to Dismiss or, in the Alternative, to Strike. Dkt. 10. In response, on August 8, 2022, Plaintiffs filed a Second Amended Complaint, which added the Lane family as Plaintiffs. Dkt. 14. Thereafter, on November 16, 2022, Plaintiffs filed a Motion for Leave to File Amended Complaint. Dkt. 45. The proposed Third Amended Complaint ("TAC") added MMS Army LLC back into the case as a Defendant and added fourteen families as named Plaintiffs. *Id*. On December 9, 2022, Magistrate Judge John F. Anderson granted Plaintiffs' Motion for Leave to Amend, Dkt. 53, and Plaintiffs filed their TAC that same day, Dkt. 56. Subsequently, on December 22, 2022, Defendants filed a Motion to Dismiss the

4

VCPA Claim or, in the Alternative, to Strike Portion of the TAC.  On August 21, 2023, this Court issued a Memorandum Opinion and Order denying Defendants' Motion to Dismiss and granting Defendants' alternative Motion to Strike.  Dkt. 196.

On May 30, 2023, Plaintiffs filed a Motion to Certify Class.[2]  Dkt. 126.  Later, on June 19, 2023, Defendants filed a Motion for Partial Summary Judgment, Dkt. 161, along with a Memorandum in Support thereof, Dkt. 162.  On July 3, 2023, Plaintiffs filed an Opposition to Defendants' Motion, Dkt. 188, and on July 10, 2023, Defendants filed a Reply in support of their Motion, Dkt. 192.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).  "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden to show the absence of a material fact."  *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing

---

[2] Where, as here, a motion for summary judgment and a motion for class certification "are both pending in a case, the Court has discretion to decide the question of summary judgment before reaching the issue of class certification." *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 679 (D. Md. 2017) (citations omitted).  In the instant case, resolving Defendants' Motion for Partial Summary Judgment will narrow the potential claims to be certified for class consideration.  As such, this Court will first resolve Defendants' Motion.

5

party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan*, 572 U.S. at 657); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And this Court requires that the non-moving party list "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B).

## III. ANALYSIS

In their Partial Motion for Summary Judgment, Defendants argue that the federal enclave doctrine bars Plaintiffs' VCPA and VRLTA claims. The federal enclave doctrine, as interpreted by the Supreme Court, provides that when "the United States acquires with the 'consent' of the state legislature land within the borders of that State [,] . . . the jurisdiction of the Federal Government becomes 'exclusive.'" *Paul v. U.S.*, 371 U.S. 245, 264 (1963). Importantly, "when an area in a State becomes a federal enclave, only the state law in effect at the time of the transfer of jurisdiction continues in force"; "[g]oing forward, state law presumptively does not apply to the enclave." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, ⸺ U.S. ⸺, 139 S. Ct. 1881, 1890 (2019) (internal citations, quotation marks, and alterations omitted).

In the instant case, Plaintiffs do not dispute that Fort Belvoir is a federal enclave, nor could they reasonably do so. *See United States v. Walker*, 552 F.2d 566, 568 (4th Cir. 1977) (recognizing Fort Belvoir as a federal enclave). Accordingly, federal law applies on the property at Fort Belvoir, in addition to any non-conflicting Virginia state law in effect at the time of cession. Because the VCPA was enacted in 1977 and the VRLTA in 1974, long after Fort Belvoir became a federal

enclave, it appears that any claims brought under these state statutes are barred. *See* Code of Virginia §§ 59.1-196-59.1-207, 55.1-1200-55.1-1262.

Seeking to avoid this result, Plaintiffs argue that, under Virginia common law as it existed in the early 1900s, choice-of-law language in contracts was enforceable, and the choice-of-law provisions in their leases do not limit application of Virginia law to those laws as they stood in the early 1900s. Dkt. 188 at 1. As such, Plaintiffs contend that the federal enclave doctrine does not bar their VCPA and the VRLTA claims. *Id.*

Plaintiffs point to several district court cases from within the Fourth Circuit in support of their position that the choice-of-law provisions contained in their leases somehow supersede the federal enclave doctrine and allow the state law claims to proceed. Dkt. 188 at 12, 16-18 (citing *JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc.*, No. 3:15CV235, 2017 WL 4003026 (E.D. Va. Sept. 11, 2017); *Page v. Corvias Grp., LLC*, No. 5:20-CV-336-D, 2021 WL 4163562 (E.D.N.C. Sept. 13, 2021); *Burn v. Lend Lease (US) Pub. Partnerships LLC*, No. 7:20-CV-174-D, 2021 WL 4164685 (E.D.N.C. Sept. 13, 2021); *Johnson v. Lendlease (US) Pub. Partnerships LLC*, No. 7:21-CV-188-D, 2022 WL 2447091 (E.D.N.C. July 5, 2022)). Their reliance on these cases, however, is misplaced. Plaintiffs first cite *JAAAT Tech. Servs.* for the proposition that a choice-of-law provision in a contract can render current Virginia state law applicable in a federal enclave—but the *JAAAT Tech. Servs.* court made no such determination. *Id.* at 12. That case involved a dispute among contractors who did work at various bases including Fort Bragg in North Carolina and Fort Gordon and Fort Benning in Georgia: two federal enclaves. *JAAAT Tech. Servs.*, 2017 WL 4003026, at *3, *8. In analyzing whether it had federal question jurisdiction over a breach of contract claim, the district court held that it did not because the choice-of-law clause in the parties' contract provided that Virginia law applied. *Id.* at * 11. The court in *JAAAT Tech.*

8

*Servs.* reasoned that "because the parties' choice-of-law clause . . . [wa]s enforceable, Virginia law applie[d] to JAAAT's breach of contract claims. As a consequence, the suit necessarily ar[o]s[e] under Virginia law, not federal law . . . ." *Id.* (quotation omitted). Notably, the *JAAAT Tech. Servs.* court's holding does not at all suggest, as Plaintiffs claim, that current state law could apply within a federal enclave pursuant to a choice-of-law contract provision. Indeed, the court in *JAAAT Tech. Servs.* made clear that "future statutes of the state are not a part of the body of laws in the ceded area" and "[s]ubsequent state common law also does not apply." *Id.* at *3.

Plaintiffs next direct this Court's attention to three opinions from the Eastern District of North Carolina—all written by the same judge: *Page v. Corvias Grp., LLC*, No. 5:20-CV-336-D, 2021 WL 4163562 (E.D.N.C. Sept. 13, 2021), *Burn v. Lend Lease (US) Pub. Partnerships LLC*, No. 7:20-CV-174-D, 2021 WL 4164685 (E.D.N.C. Sept. 13, 2021), and *Johnson v. Lendlease (US) Pub. Partnerships LLC*, No. 7:21-CV-188-D, 2022 WL 2447091 (E.D.N.C. July 5, 2022) (collectively, the "North Carolina cases"). In each of the North Carolina Cases, military families brought suit against housing providers in connection with the allegedly poor living conditions they experienced in their military housing units. *Page*, 2021 WL 4163562, at *1; *Burn*, 2021 WL 4164685, at **1-2; *Johnson*, 2022 WL 2447091, at **1-3. The defendants in the North Carolina cases, like Defendants here, urged the court to dismiss the state law claims because the statutes at issue were enacted after the land on which the military housing was situated became a federal enclave. *Page*, 2021 WL 4163562, at *6; *Burn*, 2021 WL 4164685, at *6; *Johnson*, 2022 WL 2447091, at *13. The court in each of the North Carolina cases determined that it was not necessary to address the defendants' federal-enclave argument because the plaintiffs' leases contained an enforceable choice of law provision. *Page*, 2021 WL 4163562, at *6; *Burn*, 2021 WL 4164685, at *7; *Johnson*, 2022 WL 2447091, at *13. The court then found that, because those

provisions did not limit the application of North Carolina law to those laws as they existed at the time that the federal enclaves were formed, the plaintiffs could bring claims under contemporary North Carolina law. *Page*, 2021 WL 4163562, at *7; *Burn*, 2021 WL 4164685, at *7; *Johnson*, 2022 WL 2447091, at *14.

Notably, the court in *Page* and *Burn* cited no authority in support of this conclusion that choice-of-law language can effectively abrogate the federal enclave doctrine. 2021 WL 4163562, at *7; 2021 WL 4164685, at *7. And in *Johnson*, the only cases that the court relied on for this proposition were *Page* and *Burn*. 2022 WL 2447091, at *14. Moreover, respectfully, the district court's holding in these cases directly contravened longstanding case law from within the Fourth Circuit holding that choice-of-law provisions merely govern parties' contractual relationships. For instance, in *ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983), the Fourth Circuit, applying North Carolina law, declined to extend a contractual choice of law provision to statutory claims, reasoning: "[w]e are satisfied that North Carolina's courts would apply N.C. Gen. Stat. § 75-1.1 to the facts presented here without regard to the presence of the contractual choice of law provision. The nature of the liability allegedly to be imposed by the statute is *ex delicto*, not *ex contractu*."[3] *See also P&L Development, LLC v. Bionpharma, Inc.*, 367 F. Supp. 3d 421, 429 (M.D.N.C. 2019) (finding that a provision in an agreement "may require application of North Carolina law to the interpretation and enforcement of the Agreement, but even by its own terms, such application is limited to the Agreement[;] [i]t does not provide the applicable law for a claim based on unfair and deceptive acts" (quotation omitted)); *United Dominion Indus., Inc. v. Overhead Door Corp.*, 762 F. Supp. 126, 128 (W.D.N.C. 1991) ("Because

---

[3] *Ex delicto* actions are those arising from an alleged wrong other than a breach of contract, whereas *ex contractu* actions are those arising from a contract, such as a breach of contract claim. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 200 n.11 (M.D.N.C. 1997).

the liability under N.C.Gen.Stat. § 75–1.1 is not contractual, the choice of law provision included in the agreement, which is limited to the Texas laws applicable to contracts, is not applicable."). This Court thus declines to follow the North Carolina cases in favor of controlling higher court precedent on the federal enclave doctrine and the application of contractual choice-of-law provisions.  Accordingly, summary judgment will be granted in favor of Defendants on the VCPA and VRLTA claims.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion for Partial Summary Judgment (Dkt. 161) is GRANTED; the Clerk is directed to enter judgment pursuant to Federal Rule of Civil Procedure 58 for Defendants as to Counts I and II of the TAC; and it is

FURTHER ORDERED that Plaintiffs' Motion to Certify Class (Dkt. 126) is DENIED WITHOUT PREJUDICE TO RENEWAL; Plaintiffs may file within thirty (30) days a renewed motion to certify class that sets forth which classes and subclasses they now seek to certify for class consideration in light of this Court's summary judgment ruling; and it is

FURTHER ORDERED that Defendants' Motion to Strike Declarations to Motion for Class Certification (Dkt. 164) and Corrected Motion to Strike Declarations to Motion for Class Certification (Dkt. 190) are DENIED WITHOUT PREJUDICE TO RENEWAL as MOOT.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
February 16, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge